UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK HARGROVE, JR. and RICHARD WHITE,
for themselves and others similarly-situated, and
INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE,
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW),

          Plaintiffs,

v.

EAGLEPICHER CORPORATION also known as
EP MANAGEMENT CORPORATION and as
EAGLEPICHER MANAGEMENT COMPANY,

          Defendant.

_____/

Case No. 2:10-cv-10946

Class Action

U.S. District Judge Arthur J. Tarnow

**CLASS REPRESENTATIVES' MOTION FOR ATTORNEY FEES AND EXPENSES**

**BRIEF IN SUPPORT**

**CERTIFICATE OF SERVICE**

Stuart M. Israel (P15359)
Legghio & Israel, P.C.
306 S. Washington Ave., Suite 600
Royal Oak, MI 48067
(248) 398-5900
israel@legghioisrael.com

Attorney for Class Representatives and UAW

Michael F. Saggau (P35326)
  Associate General Counsel
International Union, UAW
8000 E. Jefferson Ave.
Detroit, MI 48214
(313) 926-5216

Attorney for UAW

**CLASS REPRESENTATIVES' MOTION FOR ATTORNEY FEES AND EXPENSES**

Plaintiffs and class representatives Frank Hargrove Jr. and Richard White, for themselves and the certified class, pursuant to Fed.R.Civ.P. 23(h) and 54(d) and Section 502(g)(1) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1132(g)(1), ask this Court to award litigation expenses and fees for class counsel.

The Court ruled, on March 21, 2012 from the bench, and in the opinion and judgment issued on April 4, 2012 (Docket 35 and 36), that defendant breached CBAs and violated ERISA and that the class is entitled to enforce defendant's promises of company-paid lifetime retirement healthcare.

This motion addresses time and expenses incurred from November 14, 2009 through March 31, 2012.  It does not address later time and expenses or time and expenses yet-to-be spent on implementation of the judgment and permanent injunction.  Accordingly, the class representatives ask the Court to consider this motion now, and to consider any future motions for fees and expenses at such time as they may be presented.

Class counsel asked defendant for concurrence on March 30, 2012.  Concurrence was not given, necessitating this motion.


Michael F. Saggau (P35326)
  Associate General Counsel
International Union, UAW
8000 E. Jefferson Ave.
Detroit, MI 48214
(313) 926-5216
msaggau@uaw.net

Attorney for UAW


s/Stuart M. Israel
Stuart M. Israel (P15359)
Legghio & Israel, P.C.
306 S. Washington Ave., Suite 600
Royal Oak, MI 48067
(248) 398-5900
israel@legghioisrael.com

Attorney for Class Representatives and
  UAW


April 11, 2012

**BRIEF IN SUPPORT OF**
**CLASS REPRESENTATIVES' MOTION FOR ATTORNEY FEES AND EXPENSES**

**TABLE OF CONTENTS**

LOCAL RULE 7.1 STATEMENT OF ISSUE ............................................................... iii

LOCAL RULE 7.1 STATEMENT OF APPROPRIATE AUTHORITIES ................................. iv

TABLE OF AUTHORITIES ................................................................ vii

SUMMARY OF THE CASE ................................................................ 1

    1.    The parties. ................................................................ 1
    2.    The lawsuit. ................................................................ 1
    3.    The certified class. ................................................................ 1
    4.    Summary judgment and permanent injunction. ................................................ 2
    5.    This motion. ................................................................ 2

ARGUMENT ................................................................ 2

    I.    FEES, RULE 23(h), ERISA, *HARDT*, *FOX*, AND THE *KING* FACTORS .......... 2

        A.    The Court's Authority to Award Fees ........................................................ 2

        B.    The Court's "Broad Discretion," *Hardt*, *Fox*, and the *King* Factors .......... 3

        C.    Application of the *King* Factors ................................................................ 4

            1.    Defendant's culpability. ................................................................ 4
            2.    Defendant's ability to satisfy a fee award. ...................................... 7
            3.    The deterrent effect. ................................................................ 8
            4.    Common benefit. ................................................................ 9
            5.    The relative merits. ................................................................ 9

    II.    THE LODESTAR APPROACH ................................................................ 11

        A.    The Lodestar Approach and "Prevailing Market Rates" .......................... 11

        B.    The Parties' Counsel ................................................................ 12

            1.    Defense counsel. ................................................................ 12
            2.    Plaintiffs' counsel. ................................................................ 12

C.    Ascertaining Reasonable Rates ................................................................. 14

    1.    "Prevailing market rates" for ERISA/LMRA class counsel in the Eastern District of Michigan ............................................... 15

    2.    "Prevailing market rates" for ERISA/LMRA class counsel and federal litigators elsewhere .................................................. 16

CONCLUSION ......................................................................................................... 18

## LOCAL RULE 7.1 STATEMENT OF ISSUE

**<u>Where</u>** the Court granted plaintiffs' motion for summary judgment and permanent injunction in this ERISA/LMRA retirement healthcare class action (Docket 35 and 36),

**<u>Whether</u>** the Court should award litigation expenses and reasonable attorney fees under Rules 23(h) and 54(d) and ERISA Section 502(g)(1).

## LOCAL RULE 7.1 STATEMENT OF APPROPRIATE AUTHORITIES

1.  "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" upon a motion under Rule 54(d)(2), subject to Rule 23(h) procedures.

    **Fed. R. Civ. P. 23(h)**

2.  Claims "for attorney's fees and related nontaxable expenses must be made by motion" filed "no later than 14 days after the entry of judgment" or on such other timetable as may be ordered by the Court and must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award" and "state the amount sought or provide a fair estimate of it."

    **Fed. R. Civ P. 54(d)(2)**

3.  Notice of a motion for fees and nontaxable costs "must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

    **Fed. R. Civ. P. 23(h)(1)**

4.  The "court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a)."

    **Fed. R. Civ. P. 23(h)(3)**

5.  In ERISA actions by "a participant" or a "beneficiary," the court "in its discretion may allow a reasonable attorney's fee and costs of action to either party."

    **29 U.S.C. §1132(g)(1)**

6.  District courts have "broad discretion" to award attorney fees for parties who achieve "some degree of success on the merits" of their ERISA claims.

    ***Hardt v. Reliance Std. Life Ins. Co.*, 130 S.Ct. 2149, 2158 (2010)**

7.  In exercising discretion regarding fee requests, trial courts "need not, and indeed should not, become green-eyeshade accountants"; rather, the "essential goal in shifting fees…is to do rough justice"; "trial courts may take into account their overall sense of a suit."

    ***Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011) (internal citations omitted)**

8.     Retired employees have "peculiar vulnerability"; they have "only one recourse against an ex-employer who breaches its promise to provide benefits: litigation"; a "self-interested employer may discover that a good deal of money can be saved by illegally withholding" benefits; "proving the bad faith of such employers may be difficult" so "our law of attorney's fees should recognize the imbalance of power peculiar to the relationship between an employer and retired workers, and shift costs accordingly."

*UAW v. Loral Corp.*, 107 F.3d 11 (6th Cir. 1997) (table) at *4 (Ex. 1)

9.     District courts may consider the five *King* factors in assessing fee motions:

  1.   the degree of the opposing party's culpability or bad faith;
  2.   the opposing party's ability to satisfy an award of attorney's fees;
  3.   the deterrent effect of an award on other persons under similar circumstances;
  4.   whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA action or resolve significant legal questions regarding ERISA; and
  5.   the relative merits of the parties' positions.

*Hardt v. Reliance Std. Life Ins. Co.*, 130 S.Ct. 2149, 2158 n.8 (2010)

*Kotyk v. Ford Motor Co.*, 2011 WL 6780643 (E.D. Mich.) at *1 (Ex. 4) (Tarnow, J.), citing *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 936 (6th Cir. 2000), quoting *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998)

*Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350 (E.D. Mich.) at *3 (Edmunds, J.) (Ex. 3), citing *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998), *cert. denied* 526 U.S. 1112 (1999) and *Secretary of Dep't. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)

10.    Attorney fee awards may be determined by the "lodestar approach" which entails calculation of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)

11.    A reasonable hourly rate is determined according to the "prevailing market rates in the relevant community."  To ascertain that community, district courts "are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate attorneys in individual cases."

*Blum v. Stenson*, 465 US. 886, 895 (1984)

*McHugh v. Olympia Entertainment, Inc.*, 37 Fed. Appx. 730, 740 (6th Cir. 2002)

*Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983)

12.    "The court must ensure that class counsel are fairly compensated for the amount of work done and the results achieved....The core inquiry is whether the award is reasonable under the circumstances....[T]here is a public interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases.  Adequately compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law....An ERISA case involves highly-specialized and complex areas of law."

> ***Rankin v. Rots***, **2006 WL 1791377 (E.D. Mich.) at \*1-3 (Ex. 2) (Cohn, J.) (citations omitted)**

13.    Recent fee awards in ERISA retirement health benefit class actions in the Eastern District of Michigan approve rates of $475 per hour for lead and experienced class counsel and $125 per hour for law clerks and paralegals.

> ***Reese v. CNH Global N.V.***, **2011 WL 2600988 (E.D. Mich., June 30, 2011) at \*1, 8 (Ex. 5) (Duggan, J.)**

> ***Leonhardt v. ArvinMeritor, Inc.***, **U.S.D.C., E.D. Mich., case no. 04-cv-72845 (October 10, 2008 and April 30, 2009 orders) (Ex. 19) (Edmunds, J.)**

> ***UAW v. General Motors Corp.***, **U.S.D.C., E.D. Mich., case no. 07-cv-14074 (July 31, 2008 order) (Ex. 16) (Cleland, J.)**

> ***UAW v. Ford Motor Co.***, **U.S.D.C., E.D. Mich., case no. 07-cv-14845 (July 7, 2008 order) (Ex. 17) (Cleland, J.)**

> ***UAW v. Chrysler, LLC,*** **U.S.D.C., E.D. Mich., case no. 07-cv-14310 (May 16, 2008 order) (Ex. 18) (Cleland, J.)**

# TABLE OF AUTHORITIES

## CASES

*Allied Chemical Workers v. PPG Co.*, 404 U.S. 157 (1971) ........................................................ 6

*Bailey v. AK Steel*, 2008 WL 553764 (S.D. Ohio) (February 28, 2008 order) (Ex. 23) ......... 16, 17

*Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005), *cert. denied* 546 U.S. 1003 ............ 18

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................ 11, 15

*Cole v. ArvinMeritor, Inc.*, 549 F.3d 1064 (6th Cir. 2008) ........................................................ 12

*Cole v. ArvinMeritor, Inc.*, 516 F.Supp.2d 850 (E.D. Mich. 2005) ........................................... 12

*Cole v. ArvinMeritor,Inc.*, 515 F.Supp.2d 791 (E.D. Mich. 2006) ............................................ 12

*Fleming v. Kemper National Services, Inc.*, 373 F.Supp.2d 1000 (N.D. Cal. 2005) .................. 16

*Foltice v. Guardsman Products, Inc.*, 98 F.3d 933 (6th Cir. 1996), *cert. denied* 520 U.S.
  1143 (1997) ...................................................................................................................... 4

*Ford, et al. v. Federal-Mogul*, U.S.D.C., E.D. Mich., case no. 09-cv-14448 .............................. 12

*Fox v. Vice*, 131 S.Ct. 2205 (2011) ........................................................................... 3, 4, 10

*Golden v. Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996) .......................................................... 9

*Golden v. Kelsey-Hayes Co.*, 845 F.Supp. 410 (E.D. Mich. 1994) ............................................. 9

*Hardt v. Reliance Std. Life Ins. Co.*, 130 S.Ct. 2149 (2010) ................................................ 3, 4, 10

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................ 11

*Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801 (6th Cir. 2002) ........................... 5

*Ilick v. Miller*, 68 F.Supp.2d 1169 (D. Nev. 1999) ..................................................................... 17

*In re Asarco, LLC*, U.S. Bankr. Ct. S.D. Texas, case no. 05-21207 (March 16, 2007
  order) (Ex. 21) .................................................................................................................. 16

*In re CMS Energy ERISA Litigation*, 2006 WL 2109499 (E.D. Mich.) (June 27, 2006
  order) (Ex. 25) .................................................................................................................. 17

*IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006) .............................. 12, 13

*IUE-CWA v. General Motors Corp.*, U.S.D.C., E.D. Mich., case no. 06-cv-12151 (March
  13, 2007 order) (Ex. 12) ................................................................................................... 15

*IUE-CWA v. General Motors Corp.*, U.S.D.C., E.D. Mich., case no. 06-cv-12151
(November 1, 2006 order) (Ex. 13) ................................................................. 15

*Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350 (E.D. Mich.)
(Ex. 3) ................................................................. 3, 4, 10, 17, 19

*Kotyk v. Ford Motor Co.*, 2011 WL 6780643 (E.D. Mich.) (Ex. 4) ...................................... 3, 4, 9

*Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D. D.C. 1983), *rev'd in part on other
grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985) ..................... 17

*Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818 (E.D. Mich. 2008) .................................... 12

*Leonhardt v. ArvinMeritor, Inc.*, U.S.D.C., E.D. Mich., case no. 04-cv-72845 (October
10, 2008 and April 30, 2009 orders) (Ex. 19) ....................................... 15, 16, 17

*Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268 (6th Cir. 1983) ..... 11, 14

*McHugh v. Olympia Entertainment, Inc.*, 37 Fed.Appx. 730 (6th Cir. 2002) ........................ 11, 14

*McPherson v. Employees' Pension Plan of American Re-Insurance Co., Inc.*, 33 F.3d 253
(3rd Cir. 1994) ................................................................. 4

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ................................................................. 15, 18

*Noe v. PolyOne Corp.*, 520 F.3d 548 (6th Cir. 2008) ................................................................. 5

*North Carolina Alliance for Transp. Reform v. U.S. Dept. Of Transp.*, 168 F.Supp.2d 569
(M.D. N.C., 2001) ................................................................. 15, 17

*Rankin v. Rots*, 2006 WL 1791377 (E.D. Mich.) (Ex. 2) ........................... 2, 10, 11, 14, 17, 18, 19

*Reese v. CNH America LLC*, 574 F.3d 315, *reh'g denied* 583 F.3d 955 (6th Cir. 2009) ......... 6, 16

*Reese v. CNH Global N.V.*, 2011 WL 2600988 (E.D. Mich.) (Ex. 5) ........................................ 16

*Santos v. Pechiney Plastic Packaging, Inc.*, U.S.D.C., N.D. Calif., case no. 05-00149
(July 7, 2006 order) (Ex. 22) ................................................................. 16

*Schalk v. Teldyne, Inc.* 751 F.Supp. 1261 (W.D. Mich. 1990) ...................................... 9

*Schwartz v. Gregori*, 160 F.3d 1116 (6th Cir. 1998), *cert. denied* 526 U.S. 1112 (1999) ......... 3, 4

*Secretary of Dep't of Labor v. King*, 775 F.2d 666 (6th Cir. 1985) ..................... 3, 4, 5, 7, 8, 9, 10

*Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust
Fund*, 203 F.3d 926 (6th Cir. 2000) ................................................................. 3, 4

*Steelworkers v. Textron, Inc.*, 836 F.2d 6 (1st Cir. 1987) ................................................................. 9

viii

*Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478 (6th Cir. 2009) .......................................... 12

*UAW v. Chrysler, LLC*, U.S.D.C., E.D. Mich., case no. 07-cv-14310 (May 16, 2008 order) (Ex. 18)....................................................................................................... 16

*UAW v. Ford Motor Co.*, U.S.D.C., E.D. Mich., case no. 05-cv-74730 (December 27, 2007 order) (Ex. 15)................................................................................... 16

*UAW v. Ford Motor Co.*, U.S.D.C., E.D. Mich., case no. 07-cv-14845 (July 7, 2008 order) (Ex. 17)............................................................................................. 16

*UAW v. General Motors Corp.*, U.S.D.C., E.D. Mich., case no. 05-cv-73991 (September 24, 2007 order) (Ex. 14).............................................................................. 15

*UAW v. General Motors Corp.*, U.S.D.C., E.D. Mich., case no. 07-cv-14074 (July 31, 2008 order) (Ex. 16).............................................................................................. 16

*UAW v. Loral Corp.*, 107 F.3d 11 (6th Cir. 1997) (table) (Ex. 1) .................................... 2, 5, 8, 10

*UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), *cert. denied* 465 U.S. 1007 (1984)........................................................................................................... 6

*UAW, et al. v. Honeywell Corporation*, U.S.D.C., E.D. Mich., case no. 11-cv-14036 ............... 13

*UAW, et al. v. Kelsey-Hayes, Co., et al.*, U.S.D.C., E.D. Mich., case no. 11-cv-14434............... 12

*UAW, et al. v. Visteon Corp., et al.*, U.S.D.C., E.D. Mich., case no. 10-cv-13903 ..................... 13

*USW, et al. v. Kelsey-Hayes, Co., et al.*, U.S.D.C., E.D. Mich., case no. 11-cv-15497 .............. 13

*Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571 (6th Cir. 2006), *cert. denied* 549 U.S. 1019 (2006)............................................................................................... 6

**STATUTES**

Employee Retirement Income Security Act Section 2(b), 29 U.S.C. §1001(b) ............................ 2

Employee Retirement Income Security Act Section 502(a), 29 U.S.C. §1132(a)......................... 1

Employee Retirement Income Security Act Section 502(g)(1), 29 U.S.C. §1132(g)(1) ........................................................................................ 2, 5, 9, 10, 11, 15, 19

Labor-Management Relations Act Section 301, 29 U.S.C. §185 .................................................. 1

National Labor Relations Act, 29 U.S.C. §151, *et. seq.* ................................................................ 8

**RULES**

Federal Rule of Civil Procedure 23(g) ........................................................................ 1

Federal Rule of Civil Procedure 23(h) .......................................................... 2, 10, 19

Federal Rule of Civil Procedure 23(h)(1) ................................................................ 19

Federal Rule of Civil Procedure 54(d) ................................................................. 2, 19

Federal Rule of Civil Procedure 54(d)(2)(B)(i) ...................................................... 19

Federal Rule of Evidence 801(d)(2) .......................................................................... 7

E.D. Mich. Local Rule 54.1.2 .................................................................................. 19

**OTHER**

*Black's Law Dictionary* (6th ed. 1990) ..................................................................... 4

Pamela A. MacLean, "Are Companies Bound by Promises of Lifetime Benefits?"
    *National Law Journal* (July 12, 2006) (Ex. 7) ................................................. 8

## SUMMARY OF THE CASE

1.    **The parties.**  Plaintiffs and class representatives Frank Hargrove Jr. and Richard White are retirees and former employees of defendant EaglePicher.  They worked at EaglePicher's now-closed Wolverine Gasket plant in Inkster, Michigan where they were members of the collective bargaining unit represented by plaintiff International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW).  EaglePicher and UAW were parties to a series of collective bargaining agreements ("CBAs") promising retirement healthcare benefits.

2.    **The lawsuit.**  This lawsuit challenged EaglePicher's unilateral reduction of collectively-bargained retirement healthcare benefits, planned imposition of premium costs on retirees and their family members and surviving spouses, and intended cancellation of all company-paid retirement healthcare.  Plaintiffs Hargrove and White sued, for themselves and for the class of approximately 22 retirees, family members, and surviving spouses, for CBA breach under Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. §185, and under Section 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1132(a). Plaintiff UAW sued for CBA breach under LMRA Section 301.

3.    **The certified class.**  The Court granted class certification, approved the class representatives and, under Rule 23(g), appointed class counsel.  (Docket 34).  The certified class is:

> All former EaglePicher/Wolverine Gasket employees who were members of the UAW-represented collective bargaining unit at EaglePicher's now-closed Wolverine Gasket plant in Inkster, Michigan who are eligible under collective bargaining agreements and welfare benefit plans for company-provided retirement healthcare, and all eligible surviving spouses and other eligible dependents of those retirees.

1

**4.    Summary judgment and permanent injunction.**  The Court granted plaintiffs

summary judgment and a permanent injunction, finding that defendant breached the CBAs and

violated ERISA, directing defendant to restore the promised healthcare and take action necessary

to determine, and make whole class members for, expenses incurred as a result of the CBA

breaches and ERISA violations.  (Docket 35 and 36).

**5.    This motion.**  The class representatives ask the Court, pursuant to ERISA Section

502(g)(1) and Rules 23(h) and 54(d), to direct defendant to pay plaintiffs' litigation expenses and

reasonable attorney fees, as detailed ahead.

<b>ARGUMENT</b>

**I.    FEES, RULE 23(h), ERISA, *HARDT*, *FOX*, AND THE *KING* FACTORS**

**A.    The Court's Authority to Award Fees**

There are two legal bases for a fee award.  The First is Rule 23(h).  The second is Section

502(g)(1), ERISA's attorney fee provision.   29 U.S.C. §1132(g)(1).   Rule 23(h) permits the

Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law."

ERISA Section 502(g)(1), provides in pertinent part:

> In any action under this subchapter...by a participant [or] beneficiary...,the court
> in its discretion may allow a reasonable attorney's fee and costs of action to either
> party.

Section 502(g)(1) serves ERISA's objective "to protect...the interests of participants in

employee benefit plans and their beneficiaries...by providing for appropriate remedies, sanctions,

and ready access to the Federal courts."  29 U.S.C. §1001(b).  See *UAW v. Loral Corp.*, 107 F.3d

11 (6th Cir. 1997) (table) at *4 (Ex. 1) ("[O]ur law of attorney's fees should recognize the

imbalance of power peculiar to the relationship between an employer and retired workers, and

shift costs accordingly") and *Rankin v. Rots*, 2006 WL 1791377 (E.D. Mich.) at *2 (Ex. 2)

(Cohn, J.) ("[T]here is a public interest in ensuring that attorneys willing to represent employees

2

in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases").

    **B.**    **The Court's "Broad Discretion,"** *Hardt*, *Fox*, **and the** *King* **Factors**

The Court has "broad discretion" to award fees for parties who achieve "some degree of success on the merits" of their ERISA claims. *Hardt v. Reliance Std. Life Ins. Co.*, 130 S.Ct. 2149, 2158 (2010).

In exercising discretion regarding fee requests, trial courts "need not, and indeed should not, become green-eyeshade accountants." Rather, the "essential goal in shifting fees…is to do rough justice, not to achieve auditing perfection." Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Indeed, appellate courts "give substantial deference" to trial court fee awards based on "the district court's superior understanding of the litigation." *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011) (internal citations omitted).

While not required, district courts in the Sixth Circuit may assess fee requests using the five "*King* factors." See *Hardt*, 130 S.Ct. at 2158 n.8 ("a court may consider the five factors"); *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 2000 WL 33321350 at *3 (E.D. Mich.) (Ex. 3) (Edmunds, J.), citing *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998), *cert. denied* 526 U.S. 1112 (1999) and *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985); and *Kotyk v. Ford Motor Co.*, 2011 WL 6780643 (E.D. Mich.) at *1 (Ex. 4) (Tarnow, J.), citing *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 936 (6th Cir. 2000), quoting *Schwartz*, 160 F.3d at 1119. The *King* factors are:

1.    The degree of the opposing party's culpability or bad faith.
2.    The opposing party's ability to satisfy an award of attorney fees.
3.    The deterrent effect of an award on other persons under similar circumstances.
4.    Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA action or resolve significant legal questions regarding ERISA.
5.    The relative merits of the parties' positions.

See *Jordan* at *3, citing *Schwartz*, 160 F.3d at 1119 and *King*, 775 F.2d at 669; and *Kotyk* at *1, citing *Shelby Cnty.*, 203 F.3d at 936, quoting *Schwartz*, 160 F.3d at 1119.

There is "no holding that dictates the relative weight of each factor" and "no single factor is determinative." *Jordan* at *3, citing *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 937 (6th Cir. 1996).  In *Jordan*, the court awarded fees based on "the cumulative weight of the second, fourth, and fifth factors." At *5.  In *Kotyk*, this Court awarded fees based on "four of the five factors." At *3.

In sum, the Court has "broad discretion," may award fees based on its "overall sense of [the] suit," and need not consider the *King* factors, as *Hardt* and *Fox* hold.  Still, as we show next, here a fee award is warranted by all five *King* factors.

**C.    Application of the *King* Factors**

**1.    Defendant's culpability.**   A party may be "culpable" under the first *King* factor absent "bad faith," i.e., even where there is no "ulterior motive or sinister purpose." *McPherson v. Employees' Pension Plan of American Re-Insurance Co., Inc.*, 33 F.3d 253, 256 (3rd Cir. 1994).  Quoting *Black's Law Dictionary*, *McPherson* observed (33 F.3d at 256-257):

In a civil context, culpable conduct is commonly understood to mean conduct that is "blameable; censurable;...at fault; involving the breach of a legal duty or the commission of a fault....Such conduct normally involves something more than simple negligence.... [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose."

4

See *Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 809-810 (6th Cir. 2002) (upholding fee award under ERISA Section 502(g) and the *King* factors where the district court found "no bad faith," but concluded that defendant's termination of disability benefits was "arbitrary and capricious and based largely on the opinions of the doctors in its claim department" and, therefore, "culpability was high.") and *Loral* (Ex. 1) at \*4 (upholding fee award in an ERISA action under the *King* factors where there was not "bad faith," stressing "the peculiar vulnerability of retired employees").

Here, too, defendant's "culpability was high." EaglePicher disregarded its promises of "full medical benefits for life…at no premium cost to the employee, upon retirement." EaglePicher disregarded it promises to continue the coverage that had been in effect "for more than twenty years." EaglePicher disregarded its contractual commitments that the promised healthcare would not be "modified" absent "union consent." EaglePicher acted in its own self-interest and unilaterally shifted its own costs and financial risks to retirees and their dependents. EaglePicher announced it would impose premiums on retirees and dependents, increase these premiums over time, and ultimately terminate all company-paid healthcare. Only after plaintiffs sued did EaglePicher suspend its plan to shift premium costs to retirees. Still, EaglePicher reduced benefits and continued to assert to anxious retirees that it had the "unlimited right to make benefit plan changes at any time."

EaglePicher's self-interested rationale was that the promised coverage was "antiquated," i.e., that it cost the company too much. This rationale, however, is contrary to law. See *Noe v. PolyOne Corp.*, 520 F.3d 548, 564 (6th Cir. 2008) (although "rising healthcare costs and foreign competition" may put employers "in a difficult economic position," employers are required to keep their retirement healthcare commitments; absent "impossibility of performance, it is not the

prerogative of the judiciary to rewrite contracts in order to rescue parties from their 'improvident commitments'"); *Allied Chemical Workers v. PPG Co.*, 404 U.S. 157, 182 n.20 (1971) ("vested retirement rights may not be altered without the pensioner's consent"); *Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 578 (6th Cir. 2006), *cert. denied* 549 U.S. 1019 (2006) (once healthcare benefits are vested, "the employer's unilateral modification or reduction of those benefits" is unlawful). (See Docket 35 ¶¶17-20).

In addition, EaglePicher sought to justify the unjustifiable. For example, EaglePicher's principal defense was that it had the unilateral "right" to make "reasonable" changes under *Reese v. CNH America LLC*, 574 F.3d 315, *reh'g denied* 583 F.3d 955 (6th Cir. 2009). EaglePicher argued that *Reese* somehow revised *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), *cert. denied* 465 U.S. 1007 (1984). In fact, as we show in Docket 28, and as the Court held, EaglePicher misreads *Reese*. Indeed, as this Court held, the *Yard-Man* principles, reaffirmed explicitly in *Reese*, 574 F.3d at 321-323, govern, and these principles do *not* permit unilateral employer modification of vested healthcare. (See Docket 35 ¶25).

EaglePicher asserted other wholly unsupportable arguments, detailed in Docket 28. For example, EaglePicher sought to avoid its CBA obligations by arguing that after the plant closed there was no union from which to seek "consent" to modify the promised healthcare. At the same time, however, Benefits Director Teri M. Hoctor refers to a current CBA between the company and UAW governing "a facility in Virginia." (Docket 26, Ex. 1, ¶20). In short, the company knew exactly where to find UAW. Another example: EaglePicher tried to justify its self-interested reduction of vested retirement healthcare by invoking a unilateral 2007 SPD. As the Court held, this was contrary to the law, which holds that such *post hoc* employer efforts to undo vested benefits are unlawful. (See Docket 28 at 7-8 and Docket 35 ¶17-20).

In addition, EaglePicher's defenses were refuted by the *undisputed* declarations of four retirees. The retirees detail bargaining history and course of conduct and EaglePicher's Fed. R. Evid. 801(d)(2) admissions to the promised lifetime retirement healthcare, including $2 prescription co-payments. (See Docket 16 at Ex. 6-9 and Docket 35 ¶¶21-24).

In sum, EaglePicher intentionally disregarded its CBA obligations. EaglePicher served its own interests by replacing promised healthcare benefits with inferior benefits, and by planning to terminate all company-paid benefits. Even after being sued, EaglePicher persisted in its CBA breaches and ERISA violations and continued to defend the indefensible. (See Docket 35 at ¶¶18-20, 24-25). By any definition of the term, EaglePicher is "culpable." The first *King* factor warrants a fee award.

  **2. Defendant's ability to satisfy a fee award.** Defendant has various corporate names and manifestations—see, e.g., Docket 26, Ex. 1 at ¶2 ("Wolverine Advanced Materials, LLC, a former subsidiary of EaglePicher Corporation a/k/a EP Management Corporation and as EaglePicher Management Company"); Docket 16, Ex. 1 ("Wolverine Gasket Company, a division of Eagle-Picher Industries, Inc."); Docket 16, Ex. 2 ("Wolverine Gasket Division," a "division of Eagle-Picher Industries, Inc."); Docket 16, Ex. 10 ("EaglePicher Corporation"); Docket 16, Ex. 13 ("EP Management Corporation"); Docket 28, Ex. 17 at 1 ("Wolverine Advanced Materials"). By whatever name, as defense counsel acknowledged at the March 21, 2012 hearing, defendant is responsible for the collectively-bargained retirement healthcare promises. There is no doubt about the company's ability to satisfy a fee award. The Wolverine Advanced Materials website describes the company as "the leading developer and a trusted supplier of high-performance elastomer-coated materials to manufacturers around the globe" with "parts manufacturing facilities in the U.S., Germany and China, and exporting to 29

countries around the world." The company has Dearborn, Michigan "global headquarters" and other facilities in Virginia, Florida, Germany, Japan, China, Brazil, Korea, and India.  (Ex. 6).  The second *King* factor warrants a fee award.

        **3.**      **The deterrent effect.**  Corporations seeking to cut costs increasingly look to reduce or terminate retiree benefits.  Retirees are viewed as former employees who no longer contribute to the "bottom line" and who, unlike active employees, have no right to strike under the National Labor Relations Act.  A *National Law Journal* article titled "Are Companies Bound by Promises of Lifetime Benefits?" reports on this phenomenon, observing:  "Across the country in contract disputes and bankruptcy filings, federal courts have been pulled into the wrangling over how promises of lifetime benefits can be broken, or whether they existed at all."  (Ex. 7).

        Cost provides a strong incentive for employers to unilaterally cancel or diminish retiree benefits *despite* promises to preserve them.  Companies "roll the dice" in the hope that retirees will not have the ability to sue, or that a court might find a flaw in the retirees' rights, or that retirees might be forced by the expense and duration of litigation to settle at a discount.  Indeed, company expenditure of thousands for defense attorneys is a modest investment where the objective is to nullify lifetime benefits obligations.  Fee awards deter companies from "rolling the dice" and from causing irreparable harm, epidemic retiree anxiety, and protracted litigation.  See *UAW v. Loral Corp.*, 107 F.3d 11 (6th Cir. 1997) (table) at *4 (Ex. 1) upholding the district court award of attorney fees "to the Union":

> ...[W]e stress the peculiar vulnerability of retired employees.  No longer a direct participant in the collective bargaining process that protects the interests of active employees, a retired worker has only one recourse against an ex-employer who breaches its promise to provide benefits:  litigation.  This litigation takes money and time—and retirees may have little of either.  A self-interested employer may discover that a good deal of money can be saved by illegally withholding an amount of benefits just below the amount that would prompt its retirees, either out of outrage or fiscal interest, to sue.  Since the applicable laws are complex,

proving the bad faith of such employers may be difficult. But our law of attorney's fees should recognize the imbalance of power peculiar to the relationship between an employer and retired workers, and shift costs accordingly.

The third *King* factor warrants a fee award.

**4.    Common benefit.**  Class representatives Hargrove and White undertook the weighty responsibility of being the voices and hope for all distressed class members for more than two years, at significant cost in personal time and resources. But for the commitment of these individuals, made possible by the support of class counsel and UAW, defendant would have cancelled retiree benefits *forever*. Plaintiffs achieved a resolution substantially benefitting *all* class members, preserving healthcare earned by decades of industrial labor and sacrifice. The fourth *King* factor warrants a fee award.

**5.    The relative merits.**  The Court found no genuine dispute of material fact and found defendant liable as a matter of law. (Docket 35 ¶26 and *passim*). This alone satisfies the fifth *King* factor. See *Kotyk v. Ford Motor Co.*, 2011 WL 6780643 (E.D. Mich. 12/27/11) at *3 (Ex. 4) (Tarnow, J.) (as the court granted summary judgment, "the merits of Plaintiff's [ERISA] claim heavily outweighed the merits of Defendant's position"; the "relative merits" factor favors plaintiff's Section 502(g)(1) fee request).

Here, the defenses were without merit. EaglePicher disregarded clear CBA language— "full medical benefits," "for life," at the "current" level, unalterable absent "union consent." EaglePicher must have known that its actions, and its threats to further reduce and ultimately terminate vested retirement healthcare, were wrong and harmful. When vested healthcare is threatened, "retired workers would likely suffer emotional distress, concern about potential financial disaster, and possibly deprivation of life's necessities." *Steelworkers v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987). See *Golden v. Kelsey-Hayes Co.*, 845 F.Supp. 410, 415-416 (E.D. Mich. 1994), *aff'd* 73 F.3d 648 (6th Cir. 1996), citing *Textron* and *Schalk v. Teldyne, Inc.* 751

F.Supp. 1261 (W.D. Mich. 1990) ("because retirees live on fixed incomes, small increases in expenses create extreme financial hardship"; retirees are "more likely to suffer uncertainty and worry" over healthcare costs).  Here, EaglePicher's unilateral changes, the looming spectre of more changes "at any time" without "notice," and the never-withdrawn threat of termination of all company-paid healthcare were unlawful and caused retirees financial hardship and anxiety. See Docket 16, Hargrove decl. ¶¶5-6 (adverse financial impact, hardship, and worry); Kaminski decl. ¶¶13-15 (financial hardship, worry about economic disaster and future financial jeopardy); Perkins decl. ¶4 (financial difficulty, stress and anxiety, worry); Perry decl. ¶6 (financial difficulty, worry, and hardship).  EaglePicher's conduct was self-interested, the source of anxiety and financial harm to class members, and, as the Court's decision makes clear, legally unjustified.

In short, plaintiffs' claims were wholly meritorious, while EaglePicher's defenses were unsupportable and devoid of merit.  The fifth *King* factor warrants a fee award.

---------------------------------------------

In sum, under ERISA Section 502(g)(1), Rule 23(h), *Hardt*, and *Fox*, the Court has "broad discretion" to "take into account the overall sense of a suit" and "do rough justice," and analysis of the *King* factors is not required.  Nonetheless, to borrow a phrase from Judge Edmunds in *Jordan*, here a fee award is warranted by the "cumulative weight" of all five *King* factors.  In Judge Cohn's words in *Rankin*, "there is a public interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases."  At *2.  And, in the Sixth Circuit's word in *Loral*,

"our law of attorney's fees should recognize the imbalance of power peculiar to the relationship between an employer and retired workers, and shift costs accordingly." At *4.[1]

## II.     THE LODESTAR APPROACH

### A.     The Lodestar Approach and "Prevailing Market Rates"

Fee awards in ERISA class actions may be determined by the "lodestar approach," which entails "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." See *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The "reasonable hourly rate" is determined by reference to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In ascertaining the proper "community," district courts may "look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." *McHugh v. Olympia Entertainment, Inc.*, 37 Fed.Appx. 730, 740 (6th Cir. 2002) and *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983).

As Judge Cohn observed in *Rankin* at *3: "An ERISA case involves highly-specialized and complex areas of law." Here, both sides are represented by counsel from the "community" of lawyers who litigate in the "highly-specialized and complex" context of ERISA benefits law and class actions in Michigan and beyond.

---

[1] The "modified contingent fee" arrangement that enabled UAW and class counsel to support the retirees' litigation here was made possible because under ERISA Section 502(g)(1) often class counsel in retirement healthcare lawsuits are awarded fees at "prevailing market rates" which ensure union reimbursement and that class counsel are, in Judge Cohn's words, "adequately paid." See Israel decl. ¶¶11, 17 and discussion in Argument II.

B. **The Parties' Counsel**

1. **Defense counsel.** Defendant selected specialized counsel from Barnes & Thornburg LLP ("B&T").  B&T has "550 legal professionals" in 12 offices in eight states and Washington, D.C.  The defense was led by partner, commercial litigator, and chairman of B&T's ERISA Litigation Practice Group Howard E. Kochell.  Kochell, based in Indianapolis, Indiana, has "extensive experience in representing employers and group insurers in employee benefit disputes governed by" ERISA.  Kochell was supported by B&T partner and commercial litigator Jeffrey G. Muth, based in Grand Rapids, Michigan.  (Ex. 8).

2. **Plaintiffs' counsel.** Class counsel is Stuart M. Israel of Legghio & Israel, P.C. in Royal Oak, Michigan.  Israel has almost 40 years of legal experience.

In particular, Israel is experienced in ERISA/LMRA retirement healthcare litigation.  He served as class counsel in *Cole v. ArvinMeritor, Inc.*, 549 F.3d 1064 (6th Cir. 2008), *aff'g* 516 F.Supp.2d 850 (E.D. Mich. 2005) (granting preliminary injunction for class) and 515 F.Supp.2d 791 (E.D. Mich. 2006) (granting summary judgment and permanent injunction for class, enforcing collectively-bargained lifetime retirement healthcare promises) and *Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818 (E.D. Mich. 2008) (approving class action settlement creating employer-funded retirement healthcare VEBA) and as union counsel in *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006) (approving retirement healthcare class action settlement) and *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478 (6th Cir. 2009) (reversing and remanding retirement healthcare class action for trial).  Israel currently serves as counsel for plaintiffs and proposed classes in other ERISA/LMRA retirement healthcare litigation pending in the Eastern District of Michigan, including *Ford, et al. v. Federal-Mogul*, U.S.D.C., E.D. Mich., case no. 09-cv-14448 (Murphy, J.); *UAW, et al. v. Kelsey-Hayes, Co., et al.*, U.S.D.C., E.D. Mich., case no. 11-cv-14434 (Cook, J.); *USW, et al. v. Kelsey-Hayes, Co., et*

*al.*, U.S.D.C., E.D. Mich., case no. 11-cv-15497 (Edmunds, J.); *UAW, et al. v. Visteon Corp., et al.*, U.S.D.C., E.D. Mich., case no. 10-cv-13903 (Hood, J.); and *UAW, et al. v. Honeywell Corporation*, U.S.D.C., E.D. Mich., case no. 11-cv-14036 (Hood, J.).  Israel also has written about and made CLE presentations addressing ERISA/LMRA retirement healthcare litigation. (Israel decl. ¶¶9-10).  Among other credentials, Israel was elected as a fellow of The College of Labor and Employment Lawyers, limited to "lawyers who have demonstrated to their peers, the bar, bench and public through long performance," among other things, that they represent the "highest level of character, integrity, professional expertise and leadership" and have the "highest professional qualifications and ethical standards."  (Ex. 26).  Israel was among those characterized by Judge Hood as "reputable practitioners and trial counsel experienced in complex class action litigation" in *IUE-CWA*, 238 F.R.D. at 597.  Defendant acknowledged that Israel and Legghio & Israel "are qualified, experienced, and able to conduct" this litigation. (Docket 24 at 3).  In addition, the Court is familiar with all counsel from their work in this case which, we hope, demonstrated experience, expertise, and diligence.  A resume of Israel's professional experience and qualifications is attached to his declaration, Ex. 11.

Israel did 100% of the recorded attorney work for plaintiffs throughout this litigation, which began in November 2009.  His work included investigation; analysis of agreements, communications, labor negotiation history, and corporate transactions spanning more than two decades; and preparation of the complaint that began this action and the other papers filed over the course of the litigation.  It included communications with class representatives and class members and potential witnesses.  It included legal research and analysis of legal issues involving ERISA, LMRA, retiree benefits, labor contracts, class certification, remedies, and procedural issues.  It involved addressing a substantial body of complex law and applying that

13

law to the pertinent CBAs and healthcare plans.  It included assessing class members' ongoing experiences with the altered healthcare and obtaining expert advice on the salient plans.  It included the protracted mediation process and, when mediation did not resolve the case, the briefing and argument that led to class certification and summary judgment for plaintiffs.  It entailed contending with the vigorous defense over more than two years.  Israel's work, and the supporting work of Legghio & Israel professional staff, is detailed in Ex. 9.  (See Israel decl. ¶¶13-15).

Retiree benefits class actions are labor-intensive.  Legghio & Israel's recorded hours reflect only part of the effort needed to prosecute plaintiffs' case.  The totals do not include work by UAW Associate General Counsel Michael F. Saggau and other UAW professional staff.  The totals do reflect measures that promoted efficiency, avoided duplication, and controlled expense. (See Israel decl. ¶¶11, 13-16).

We ask that the Court award fees for all Legghio & Israel recorded work hours, at reasonable rates, discussed next.

### C.    Ascertaining Reasonable Rates

Ascertaining the "prevailing market rates in the relevant community," as noted, involves consideration of experience and specialized expertise, and setting rates sufficient to ensure that class counsel are "fairly compensated for the amount of work done and the results achieved" and "that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases."  See *McHugh*, 37 Fed.Appx. at 740; *Louisville Black Police Officers Org.*, 700 F.2d at 278; and *Rankin* at *1-2.  Again, as Judge Cohn observed:  "An ERISA case involves highly-specialized and complex areas of law." *Rankin* at *3.

1.    "Prevailing market rates" for ERISA/LMRA class counsel in the Eastern District of Michigan

Of precise pertinence is *Leonhardt v. ArvinMeritor, Inc.*, U.S.D.C. E.D. Mich. 04-cv-72845, in which Stuart Israel was class counsel.   In *Leonhardt*, in 2008 and 2009, Judge Edmunds granted the class representatives' post-settlement ERISA Section 502(g)(1) fee motion and awarded Israel hourly fees at $475.  She also awarded $125 hourly fees for Israel's firm's paralegal and law clerk work.  (Ex. 19).[2, 3]

Another direct measure of reasonable rates is provided by other recent fee awards in Eastern District of Michigan ERISA/LMRA retirement healthcare benefits class actions.  In 2006 and early 2007, in *IUE-CWA v. General Motors Corp.*, U.S.D.C., E.D. Mich., case no. 06-cv-12151, Judge Hood awarded class counsel and union counsel (including Israel) hourly fees of $390.  (Ex. 12 and 13).  In September 2007, in *UAW v. General Motors Corp.*, U.S.D.C., E.D. Mich., case no. 05-cv-73991, Judge Cleland awarded experienced class counsel hourly fees of $450.  (Ex. 14).  In December 2007, in *UAW v. Ford Motor Co.*, U.S.D.C., E.D. Mich., case no.

---

[2] A "reasonable attorney's fee" includes fees for hours reasonably expended by paralegals and law clerks at reasonable hourly rates.  See *Missouri v. Jenkins*, 491 U.S. 274, 284-289 (1989).

[3] In their retainer agreements, the *Hargrove* class representatives acknowledge UAW support and authorize class counsel to seek fees "as may be awarded by the court."  UAW support is based on a "modified contingent fee" arrangement, typical in ERISA class actions arising out of CBAs.  This arrangement contemplates the strong possibility that if class counsel is successful, he will recover fees at "prevailing market rates" and then reimburse "maintenance legal fees" paid by UAW during the litigation.  (Israel decl. ¶17).

UAW support does not alter the Court's authority to award fees at "prevailing market rates" for attorneys of experience comparable to that of class counsel.  See *Blum v. Stenson*, 465 U.S. 886, 895-896 (1984) ("reasonable fees" are "to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel"; rejecting a "cost-based standard" and awarding market rate fees to attorneys employed by a legal aid organization) and *North Carolina Alliance for Transp. Reform v. U.S. Dept. Of Transp.*, 168 F. Supp.2d 569, 581 (M.D. N.C., 2001)  (awarding fees at the "market rate" although counsel charged plaintiffs "far below the market rate"; "To award reduced fees because of the arrangement between Plaintiffs and Plaintiffs' counsel would eliminate any incentive for Plaintiffs' counsel to take [environmental] cases at a reduced rate and would potentially prevent Plaintiffs' counsel from accepting this type of case in the future.").

05-cv-74730, Judge Borman approved $450 hourly fees for class counsel.  (Ex. 15).  More recently, in May and July 2008, in *UAW v. General Motors Corp.*, U.S.D.C., E.D. Mich., case no. 07-cv-14074 (Ex. 16), *UAW v. Ford Motor Co.*, U.S.D.C., E.D. Mich., case no. 07-cv-14845 (Ex. 17), and *UAW v. Chrysler, LLC,* U.S.D.C., E.D. Mich., case no. 07-cv-14310 (Ex. 18), Judge Cleland awarded experienced class counsel hourly fees of $475.

Most recently, in 2011, in *Reese v. CNH Global N.V.*, 2011 WL 2600988 (E.D. Mich.) at *4, Judge Duggan awarded the two lead class counsel hourly fees at $475.  (Ex. 5).  Judge Duggan found that this $475 rate is "consistent with current market rates charged by attorneys with comparable skills, experience, and reputation and for similar services."  Class counsel in *Reese*—Roger McClow and Samuel McKnight—and Israel have comparable years of experience and similar labor practices.  Indeed, McClow and McKnight cited the $475 fee rate awarded Israel in *Leonhardt* in 2009 to support the conclusion ultimately adopted by Judge Duggan: that $475 was the appropriate "current market rate."  (Israel decl. ¶18 and Ex. 20).

### 2. "Prevailing market rates" for ERISA/LMRA class counsel and federal litigators elsewhere

ERISA class action fee awards in earlier years in other jurisdictions apply similar hourly rates for class counsel, providing frames of reference.  See *In re Asarco, LLC*, U.S. Bankr. Ct. S.D. Texas, case no. 05-21207 (March 16, 2007 order) (Ex. 21) ($450 per hour for class counsel) and *Santos v. Pechiney Plastic Packaging, Inc.*, U.S.D.C., N.D. Calif., case no. 05-00149 (July 7, 2006 order) (Ex. 22) ($450 per hour for class counsel).  See also *Fleming v. Kemper National Services, Inc.*, 373 F.Supp.2d 1000, 1010-1011 (N.D. Cal. 2005) ($450 per hour in individual action for disability benefits for attorney with "more than ten years of experience in ERISA issues.") and *Bailey v. AK Steel*, 2008 WL 553764 (S.D. Ohio) (February 28, 2008 order) (Ex. 23) at *3 (retirees' class counsel awarded "lodestar" fees at $450 per hour subject to a 3.04

multiplier—warranted by "the complexity of the case, the attendant risks, the size of the settlement recovered, and class counsels' continued obligations to the class"—yielding an effective rate of $1368 per hour).

Another frame of reference is the "*Laffey* Matrix," which reflects hourly rates for federal litigators. See *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D. D.C. 1983), *rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). This court, and others outside the District of Columbia, have used the *Laffey* Matrix to set fee awards. See e.g., *Jordan* at *6 (Edmunds, J.); *North Carolina Alliance for Transp. Reform, Inc. v. U.S. Dept. of Transp.*, 168 F.Supp.2d 569, 579 (M.D. N.C. 2001); and *Ilick v. Miller*, 68 F.Supp.2d 1169, 1176 (D. Nev. 1999). Under the *Laffey* Matrix, as updated by the District of Columbia United States Attorney, hourly rates for 2011-2012 are $495 for federal litigators with 20 or more years experience and $140 for paralegals and law clerks. (Ex. 24).[4]

-------------------------------------------

We suggest that the $475 hourly rate is appropriate here for class counsel with almost 40 years of practice and specialized ERISA/LMRA retirement benefits class action experience and expertise. Class counsel Israel was awarded $475 hourly fees in 2008 and 2009 in *Leonhardt* for legal work beginning in 2004. The same $475 hourly rate was awarded in the various other cited cases in 2008 and 2011. We suggest this same rate is appropriate now to ensure "that attorneys

---

[4] To provide more frames of reference, in *Rankin* (Ex. 2) Judge Cohn approved a fee of 10% of an $11.7 million recovery to "ensure that class counsel are fairly compensated for the amount of work done and the results achieved." See also *Bailey* (Ex. 23), which awarded an effective hourly rate of $1368 and *In re CMS Energy ERISA Litigation*, 2006 WL 2109499 (E.D. Mich.) (June 27, 2006 order) (Ex. 25) at *3 in which Judge Steeh awarded class counsel fees totaling 28.5% of the $28 million (plus interest) settlement fund (i.e., $7.98 million plus), finding these fees reasonable "in light of" the "value of the benefit" for the class, the "value of the services on an hourly basis," the contingent fee arrangement, "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others," "the complexity of the litigation," and "the professional skill and standing of counsel involved on both sides."

willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases." *Rankin* at *2.

We suggest that the $475 rate should apply to all legal work since this action began in 2009.  The Court may approve all fees computed on current rates to adjust for the delay in compensation because the fees will be "received several years after services were rendered." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005), citing *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989).

In sum, the class representatives request a fee award for all hours worked based on the rates approved for class counsel with comparable qualifications in similar ERISA/LMRA litigation by Judge Cleland in 2008, by Judge Edmunds (for Israel) in 2008 and 2009, and by Judge Duggan in 2011: $475 for attorneys and $125 for paralegals and law clerks.

## CONCLUSION

During the period November 14, 2009 through March 31, 2012, class counsel and law firm professional staff have worked 706 hours in this litigation.  These work hours are detailed by date, task, and individual in the record attached as Ex. 9.  Based on the requested hourly rates, they total $245,400 in fees as follows:

| | | | |
|---|---|---|---|
| Stuart M. Israel | 449 hrs. | @ $475 | $213,275.00 |
| Shimon Belen | 157.25 hrs. | @ $125 | $19,656.25 |
| Tammy L. Popchock | 99.75 hrs. | @ $125 | $12,468.75 |
| | | | $245,400.00 |

In addition, during that period plaintiffs and counsel incurred $2,062.95 in costs and expenses for photocopying, telephone, Westlaw and Pacer fees, and other litigation-related expenses as detailed in Exhibit 10.[5]

Finally, we ask that the Court find that Israel's April 6, 2012 letter to class members (see Israel decl. ¶19 and Ex. 27) satisfies Rule 23(h)(1) class notice requirements and that this motion otherwise satisfies the governing rules.

In sum, we ask, pursuant to ERISA Section 502(g)(1) and Rules 23(h) and 54(d), that the Court award, and direct defendant to pay, class counsel's fees and expenses totaling $247,462.95 for time and expenses for the period November 14, 2009 through March 31, 2012.[6]

---

[5] "[R]easonable and necessary expenses" include "photocopying, postage, travel, lodging, filing fees and Pacer expenses, long distance telephone, telecopier, computer database research, depositions expenses" as well as "messenger, overnight courier, Westlaw/Pacer, hotels, meals, air travel, and ground travel." *Rankin* (Ex. 2) at *3 and *Jordan* (Ex. 3) at *6. The total expenses in this litigation through March 31, 2012 include $420 for the filing fee and service costs that were taxed by the clerk in Docket 38. As noted, under Rules 23(h) and 54(d)(2), the court may also award "nontaxable costs" and "nontaxable expenses."

[6] Although further fees and expenses will be necessary to complete this litigation and implement the Court's injunction, we file this motion now in compliance with the procedures and timetables set by Rule 54(d)(2)(B)(i) and L.R. 54.1.2. We plan, once the litigation process and necessary post-judgment efforts are complete, to ask for additional fees and expenses for work and costs incurred after the period addressed in this motion, through the conclusion of this litigation and implementation of the remedies directed by the Court.

s/Stuart M. Israel
Stuart M. Israel (P15359)
Legghio & Israel, P.C.
306 S. Washington Ave., Suite 600
Royal Oak, MI 48067
(248) 398-5900
israel@legghioisrael.com

Attorneys for Class Representatives and UAW


Michael F. Saggau (P35326)
   Associate General Counsel
International Union, UAW
8000 E. Jefferson Ave.
Detroit, MI 48214
(313) 926-5216
msaggau@uaw.net

Attorney for UAW

April 11, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Jeffrey G. Muth
Barnes & Thornburg LLP
171 Monroe Avenue NW, Ste 1000
Grand Rapids, Michigan 49503
(616) 742-3930
jmuth@btlaw.com

In addition, I have caused the foregoing to be emailed to the following non-ECF participant:

Howard E. Kochell
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204-3535
(317) 231-7276
howard.kochell@btlaw.com

s/Stuart M. Israel
Stuart M. Israel