UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK HARGROVE, JR. and RICHARD WHITE,
for themselves and others similarly-situated, and
INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE,
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW),

|  |  |
|---|---|
| Plaintiffs, | Case No. 2:10-cv-10946 |
|  | Class Action |
| v. | U.S. District Judge Arthur J. Tarnow |

EAGLEPICHER CORPORATION also known as
EP MANAGEMENT CORPORATION and as
EAGLEPICHER MANAGEMENT COMPANY,

Defendant.

_____/


**JOINT MOTION (1) FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT, (2) FOR APPROVAL OF PROPOSED CLASS NOTICE, (3) TO SET AN
OBJECTION DEADLINE, AND (4) TO SET A FAIRNESS HEARING**

**BRIEF IN SUPPORT**

**CERTIFICATE OF SERVICE**

Howard E. Kochell (5516-49)
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204
317-236-1313
howard.kochell@btlaw.com

Jeffrey G. Muth (P65041)
Barnes & Thornburg LLP
171 Monroe Avenue NW, Ste 1000
Grand Rapids, Michigan 49503
(616) 742-3930
jmuth@btlaw.com

Attorneys for Defendant EaglePicher and
   Wolverine

Stuart M. Israel (P15359)
Legghio & Israel, P.C.
306 South Washington, Suite 600
Royal Oak, MI 48067
248-398-5900; israel@legghioisrael.com

Class Counsel and Attorney for all Plaintiffs

Michael F. Saggau
Associate General Counsel
International Union, UAW
8000 E. Jefferson Avenue
Detroit, MI 48214
313-926-5216; msaggau@uaw.net

Attorney for UAW

**JOINT MOTION (1) FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, (2) FOR APPROVAL OF PROPOSED CLASS NOTICE, (3) TO SET AN OBJECTION DEADLINE, AND (4) TO SET A FAIRNESS HEARING**

Plaintiffs Frank Hargrove Jr. and Richard White, for themselves and on behalf of the certified class; plaintiff International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW); defendant EaglePicher Corporation, also known as EP Management Corporation and EaglePicher Management Company, and Wolverine Advanced Materials, LLC, a party to the parties' proposed Settlement Agreement, pursuant to Fed. R. Civ. P. 23(e), ask the Court to:  **(1)** preliminarily approve the Settlement Agreement (Ex. A) and their settlement intended to fully and finally resolve this class action; **(2)** approve the proposed class notice to the class (Ex. B); **(3)** set an objection deadline; and **(4)** set a hearing on the fairness, reasonableness, and adequacy of the settlement and the Settlement Agreement.

All parties and Wolverine join in this motion. This motion is supported by the attached brief and exhibits.

s/Howard E. Kochell
Howard E. Kochell (5516-49)
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN  46204
317-236-1313
howard.kochell@btlaw.com

Jeffrey G. Muth (P65041)
Barnes & Thornburg LLP
171 Monroe Avenue NW, Ste 1000
Grand Rapids, Michigan 49503
(616) 742-3930
jmuth@btlaw.com

Attorneys for Defendant EaglePicher
   and Wolverine

May 9, 2013

s/Stuart M. Israel
Stuart M. Israel (P15359)
Legghio & Israel, P.C.
306 South Washington, Suite 600
Royal Oak, MI 48067
248-398-5900
israel@legghioisrael.com

Class Counsel and Attorney for all Plaintiffs

Michael F. Saggau
Associate General Counsel
International Union, UAW
8000 E. Jefferson Avenue
Detroit, MI 48214
313-926-5216
msaggau@uaw.net

Attorney for UAW

**BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

LOCAL RULE 7.1 STATEMENT OF ISSUES..................................................................ii

LOCAL RULE 7.1 STATEMENT OF APPROPRIATE AUTHORITIES..................................iii

TABLE OF AUTHORITIES ...........................................................................vi

INTRODUCTION ...................................................................................1

SUMMARY OF FACTS ...............................................................................2

    1.    Background. .....................................................................2
    2.    Plaintiffs' claims. ..............................................................2
    3.    Defendant's response. ..........................................................3
    4.    The district court litigation......................................................3
    5.    The appeal and Settlement Agreement. ...........................................3
    6.    The settlement terms. ...........................................................4
    7.    Proposed notice to class. ........................................................4
    8.    Rule 23(e) statement. ...........................................................5

ARGUMENT .......................................................................................5

    I.    THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE................................................................................5

        A.    The Legal Standards .....................................................5

        B.    The Legal Standards Applied.............................................8

    II.    THE PROPOSED RULE 23(e)(1) NOTICE TO CLASS MEMBERS...............12

    III.    THE OBJECTION TIMETABLE ...................................................13

CONCLUSION....................................................................................13

## LOCAL RULE 7.1 STATEMENT OF ISSUES

**WHERE**, on April 4, 2012, this Court entered an order certifying the class and appointing class representatives and class counsel (Docket 34), an Order Granting Summary Judgment and Permanent Injunction in favor of the plaintiffs and against EaglePicher (Docket 35, the "Injunction Order"), a Final Judgment and Permanent Injunction (Docket 36, the "Final Judgment"), after which EaglePicher appealed to the Sixth Circuit Court of Appeals; and

**where**, the parties engaged in negotiations overseen by a Sixth Circuit mediator, reached a mutually-acceptable compromise, and agree to settle the lawsuit to end the uncertainties and expense of continued litigation, to achieve final resolution of the lawsuit; and

**where**, the settlement, reflected in the Settlement Agreement, provides comprehensive, company-paid lifetime retirement healthcare for all class members,

**WHETHER** this Court, pursuant to Fed.R.Civ.P. 23, should:

1. preliminarily approve the proposed settlement as reflected in the Settlement Agreement (Ex. A);

2. approve the proposed notice (Ex. B) for mail distribution to class members;

3. set a Rule 23(e)(5) objection deadline; and

4. set a Rule 23(e)(2) fairness hearing for consideration of final approval of the settlement and the Settlement Agreement.

## LOCAL RULE 7.1 STATEMENT OF APPROPRIATE AUTHORITIES

1.   A settlement binding on class members requires district court approval "after a hearing and on finding" that the settlement "is fair, reasonable, and adequate."

     **Fed. R. Civ. P. 23(e)(2)**

2.   "The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

     **Fed. R. Civ. P. 23(e)(3)**

3.   "The evaluation and approval of a class settlement is committed to the sound discretion of the district court."

     ***IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583, 594 (E.D. Mich. 2006)**

4.   In deciding whether a proposed class settlement is "fair, reasonable, and adequate," the district court considers "the federal policy favoring settlement of class actions."

     ***UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007)**

5.   A district court's role in reviewing class action settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

     ***Clark Equip. Co. v. Int'l Union, Allied Indus. Workers,* 803 F.2d 878, 880, *reh. and reh en banc denied* (6th Cir. 1986) *(per curiam), cert. denied,* 480 U.S. 934 (1987) (quoting *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982))**

     ***Priddy v. Edelman,* 883 F.2d 438, 447 (6th Cir. 1989)**

6.    Factors considered by the district court may include:

> **(1)** the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; **(2)** the risks, expense, and delay of further litigation; **(3)** the judgment of experienced counsel who have competently evaluated the strength of their proofs; **(4)** the amount of discovery completed and the character of the evidence uncovered; **(5)** whether the settlement is fair to the unnamed class members; **(6)** objections raised by class members; **(7)** whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and **(8)** whether the settlement is consistent with the public interest.

> *IUE-CWA v. General Motors Corp.,* **238 F.R.D. 583, 594 (E.D. Mich. 2006) (citations omitted)**

> *In re Cardizem CD Antitrust Litigation*, **218 F.R.D. 508, 522 (E.D. Mich. 2003) (citations omitted)**

7.    The district court's preliminary assessment requires "no more than an informal presentation of the parties' proposals to the Court."

> *In re Inter-Op Hip Prosthesis Liability Litigation,* **204 F.R.D. 330, 337 (N.D. Ohio 2001)**

8.    Preliminary approval "is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive."

> *In re Dun & Bradstreet Credit Services Customer Litigation,* **130 F.R.D. 366, 370 (S.D. Ohio 1990)**

9.    "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement."

> *In re Telectronics Pacing Systems,* **137 F.Supp.2d 985, 1015-1016 (S.D. Ohio 2001) (quoting** *Manual for Complex Litigation* **§30.44 (2d ed. 1985))**

> *In re Inter-Op Hip Prosthesis Liability Litigation,* **204 F.R.D. 330, 350 (N.D. Ohio 2001)**

10.    The district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."

> **Fed. R. Civ. P. 23(e)(1)**

11.     The district court has "virtually complete discretion" to select "the kind of notice to employ in order to inform class members of a settlement hearing."

   ***Franks v. Kroger Co.,* 649 F.2d 1216, 1222-1223 (6th Cir. 1981)**

12.     The notice "should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" "All that the notice must do is 'fairly apprise'" class members of "'the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests."

   ***UAW v. General Motors Corp.,* 497 F.3d 615, 629-630 (6th Cir. 2007) (citations omitted)**

# TABLE OF AUTHORITIES

## CASES

*Arena v. ABB Power T&D Co.*, Cause No. IP99-0391 C-M/S, U.S.D.C., S.D. Ind................... 11

*Bittinger v. Tecumseh Products*, 201 F.3d 440 (6th Cir. 1999)...................................... 9

*Bronson v. Board of Education*, 604 F.Supp. 68 (S.D. Ohio 1984) ................................ 5

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers,* 803 F.2d 878, *reh. and reh en banc denied* (6th Cir. 1986) *(per curiam)*, *cert. denied,* 480 U.S. 934 (1987) .............. iii, 6

*Faulman v. Security Mutual Financial Co.*, 333 Fed.Appx. 699 (3rd Cir. 2009) ........................ 11

*Franks v. Kroger Co.,* 649 F.2d 1216 (6th Cir. 1981) ........................................... v, 12

*Golden v. Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996), *cert. denied* 519 U.S. (1996)............. 8

*Hargrove, et al. v. EaglePicher Corp.*, 852 F.Supp.2d 851 (E.D. Mich. 2012) ............................ 1

*In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508 (E.D. Mich. 2003)........................... iv, 6

*In re Dun & Bradstreet Credit Services Customer Litigation,* 130 F.R.D. 366 (S.D. Ohio 1990) ........................................................................ iv, 7

*In re Inter-Op Hip Prosthesis Liability Litigation,* 204 F.R.D. 330 (N.D. Ohio 2001)......... iv, 7, 8

*In re Telectronics Pacing Systems,* 137 F.Supp.2d 985 (S.D. Ohio 2001)........................ iv, 8, 11

*IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583 (E.D. Mich. 2006) ....iii, iv, 5, 6, 7, 9, 10, 11

*McCoy v. Meridian Automotive Systems*, 390 F.3d 417 (6th Cir. 2004) ....................... 8

*Moore v. ABB Power T&D Co.*, Cause No. IP00-0085-C-H/G, U.S.D.C., S.D. Ind. ................. 11

*Moore v. Menasha Corp.*, 690 F.3d 444, 450 (6th Cir. 2012), *cert. denied* 133 S.Ct. 1643 (2013).................................................................................. 8

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)....................... 12

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982) ............... iii, 6

*Priddy v. Edelman,* 883 F.2d 438 (6th Cir. 1989).................................... iii, 6

*Reed v. Rhodes*, 869 F.Supp. 1274 (N.D. Ohio 1994) ................................. 5

*Reese v. CNH America LLC*, 574 F.3d 315, *reh. denied* (6th Cir. 2009) ...................... 8

*Reese v. CNH America LLC*, 694 F.3d 681 (6th Cir. 2012) ........................................................ 8

*Shy v. Navistar Intl. Corp.,* 1993 WL 1318607  (S.D. Ohio May 27, 1993) (Ex. E)..................... 7

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) .................................................. 9

*UAW v. Ford Motor Co.*, 2006 WL 1984363 (E.D. Mich. July 13, 2006) (Ex. D) ........................ 7

*UAW v. General Motors Corp.*, 2005 WL 5416766 (E.D. Mich. Dec. 22, 2005) (Ex. F)............ 13

*UAW v. General Motors Corp.*, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) (Ex. C) .............. 6

*UAW v. General Motors Corp.,* 497 F.3d 615 (6th Cir. 2007) ............................... iii, v, 5, 6, 9, 12

*UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), *cert. denied* 465 U.S. 1007 (1984)......................................................................................................................... 8, 9

## STATUTES

Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001 *et seq* ........................... 2

Labor-Management Relations Act (LMRA) Section 301, 29 U.S.C. §185................................... 2

## RULES

Federal Rule of Civil Procedure 23 .......................................................................................... 4

Federal Rule of Civil Procedure 23(e)................................................................................... 5, 10

Federal Rule of Civil Procedure 23(e)(1) ........................................................................ iv, 5, 12

Federal Rule of Civil Procedure 23(e)(2) .............................................. iii, 1, 4, 5, 11, 13

Federal Rule of Civil Procedure 23(e)(3) ............................................................................. iii, 5

Federal Rule of Civil Procedure 23(e)(5) .................................................................. 1, 5, 11, 13

## OTHER

*Manual for Complex Litigation* §21.632 (4th ed. 2004). .............................................................. 7

*Manual for Complex Litigation* §30.44 (2d ed. 1985) ................................................................. 8

## INTRODUCTION

This class action addresses the modification and reduction of retiree health benefits arising under a series of collective bargaining agreements ("CBAs").  The individual plaintiffs and class representatives are Frank Hargrove Jr. and Richard White.  The union plaintiff is the UAW.  The defendant is EaglePicher Corporation, also known as EP Management Corporation and EaglePicher Management Company.

On April 4, 2012, this Court certified the class and appointed the class representatives and class counsel (Docket 34), entered an Order Granting Summary Judgment and Permanent Injunction in favor of the plaintiffs and against EaglePicher (Docket 35, the "Injunction Order"), reported at 852 F.Supp.2d 851 (E.D. Mich. 2012), and entered its Final Judgment and Permanent Injunction (Docket 36, the "Final Judgment").  The Injunction Order and Final Judgment, among other things, order EaglePicher to restore retiree health benefits to the levels that existed prior to January 1, 2010, the effective date of the modifications.

EaglePicher appealed to the Sixth Circuit.  While the appeal was pending, the parties engaged in settlement discussions in the Sixth Circuit mediation process and reached the settlement reflected in the Settlement Agreement attached as Exhibit A.  Because the stakes and the uncertainties are great, the parties reached their mutually-acceptable compromise to resolve their dispute.  The parties now ask the Court to preliminarily approve their settlement and the Settlement Agreement.

In addition, the parties ask that the Court approve the proposed notice, attached as Exhibit B (also Ex. 2 of the Settlement Agreement), for first-class mailing to class members.  Finally, the parties ask that the Court set a Rule 23(e)(5) objection deadline and schedule a Rule 23(e)(2) fairness hearing for consideration of final approval of the settlement and the Settlement Agreement and entry of an order approving the settlement and finally resolving this lawsuit.

### SUMMARY OF FACTS

**1.** **Background.**  The lawsuit was filed in 2010 in response to EaglePicher's modification and reduction of collectively-bargained lifetime retirement healthcare benefits.  The lawsuit was brought by the UAW and two former UAW-represented hourly employees who retired from EaglePicher's now-closed Wolverine Gasket plant in Inkster, Michigan:  Frank Hargrove Jr. and Richard White.   Hargrove and White sued for themselves and for approximately 21 retirees and the retirees' spouses, surviving spouses, and dependents.  The retirees worked in the UAW-represented unit at the plant and retired under CBAs negotiated by UAW and EaglePicher.  All class members are participants in welfare benefit plans created, sponsored, and operated by EaglePicher to provide healthcare for retirees and their eligible dependents and surviving spouses.

**2.** **Plaintiffs' claims.**  Plaintiffs claimed that EaglePicher in various CBAs promised to provide hourly retirees and their dependents with lifetime retirement health benefits.  Plaintiffs claimed that EaglePicher broke those promises beginning in 2010 by modifying and reducing health benefits for class members unilaterally and without UAW written consent.  Plaintiffs sued for CBA breach under Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. §185.  In addition, the class sued under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001 *et seq.*

Plaintiffs claimed that EaglePicher breached the CBAs and violated ERISA by increasing co-pays, deductibles, and out-of-pocket maximums, by shifting costs to retirees and other class members, and by declaring the prerogative to make additional unilateral modifications and reductions in the future.  Plaintiffs asked the Court to direct EaglePicher to reinstate benefits for class members at the levels that existed prior to January 1, 2010; to "make whole" class members

for out-of-pocket costs incurred due to the unilateral modifications, and to otherwise meet contractual and legal obligations under the CBAs and ERISA.

**3.** **Defendant's response.**  In response, EaglePicher claimed that it did not promise lifetime health benefits in CBAs; that its obligations to provide retiree health benefits ended with the expiration of each CBA; that the Inkster plant was closed and sold and there are no current CBAs providing for continued retiree health benefits; that it had the legal right to reduce or make reasonable modifications to retiree health benefits and properly did so in 2010 and later and that it has the right to do so in the future; that the retirees are no longer part of a bargaining unit represented by UAW, such that consent by the UAW could not be given to bind the class members; and that EaglePicher had no obligation under any CBA or ERISA to restore or provide retiree health benefits at the levels that existed prior to January 1, 2010.  EaglePicher asked that the Court determine that it has not breached any CBA or otherwise broken any promises. EaglePicher asked that the Court dismiss the lawsuit.

**4.** **The district court litigation.**  On April 4, 2012, this Court certified the class and entered summary judgment and a permanent injunction in favor of plaintiffs and against EaglePicher.  Docket 34-36.

**5.** **The appeal and Settlement Agreement.**  EaglePicher appealed to the Sixth Circuit.  While the appeal was pending, the parties engaged in the Sixth Circuit mediation process and reached a settlement intended to avoid additional cost, time, effort, and the uncertainties of continued litigation.  Because the stakes and uncertainties are substantial, the parties seek to resolve the litigation by mutually-acceptable compromise as reflected in the Settlement Agreement.  (Ex. A).  The parties agreed to settlement on the terms described in the

Settlement Agreement, subject to this Court's approval in the Rule 23 process.  If the settlement is approved, the lawsuit will end.

6.     **The settlement terms.**  After EaglePicher closed the plant and after this lawsuit was filed, in an Asset Purchase Agreement between Wolverine Advance Materials, LLC ("Wolverine") and EaglePicher, Wolverine agreed by contract to assume responsibility for the retirement healthcare benefits at issue in the lawsuit.  The Settlement Agreement provides for Wolverine to provide a Healthcare Program through a combination of insurance and reimbursement providing class members with lifetime 100%-company-paid healthcare insurance and coverage.  In addition, the Agreement provides for "make whole" reimbursement of class members' out-of-pocket expenses incurred during the period of reduced coverages and for Wolverine's payment of class counsel's attorney fees, costs, and expenses.  The Agreement also preserves the enforceability against EaglePicher of this Court's Injunction Order, Final Judgment, and other orders, providing that Wolverine's full compliance with the Settlement Agreement terms will be deemed to satisfy the Injunction Order, Final Judgment, and other orders.  The complete terms of the Settlement Agreement are set out in the Agreement and its Exhibits, attached as Exhibit A to this brief.  All parties and Wolverine ask that the Court preliminarily approve the settlement and Settlement Agreement under Rule 23.

7.     **Proposed notice to class.**  The parties also propose that the "Important Notice About Health Benefits For EaglePicher/Wolverine Gasket Retirees And Their Families" (Ex. B) be sent by first-class mail to each class member.  The notice explains the litigation and the Settlement Agreement and sets out the rights of class members to object and be heard at the Rule 23(e)(2) "fairness hearing."  Under the Agreement, Wolverine has responsibility for mailing the notices using addresses from its benefits and pension rolls, which the parties believe contain the

best available contact information.  The notice is to be accompanied by a copy of the complete Settlement Agreement with exhibits.

      **8.**   **<u>Rule 23(e) statement.</u>**   Pursuant to Rule 23(e)(3), the parties represent to the Court that the Settlement Agreement and exhibits (Ex. A), which incorporates the proposed notice (Ex. 2 to the Settlement Agreement), reflects all the agreements between and among them "made in connection with the proposal."

**ARGUMENT**

      "The evaluation and approval of a class settlement is committed to the sound discretion of the district court."  *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006).  Approval involves four steps.  **<u>First</u>**, the court must preliminarily approve the proposed settlement and notice.  Rule 23(e).  **<u>Second</u>**, class members must be given court-approved "notice in a reasonable manner."  Rule 23(e)(1).  **<u>Third</u>**, class members must be given an opportunity to object to the proposed settlement.  Rule 23(e)(5).  **<u>Fourth</u>**, the court must hold a hearing and determine whether the proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)-(2).  See *Reed v. Rhodes*, 869 F.Supp. 1274, 1278 (N.D. Ohio 1994) and *Bronson v. Board of Education*, 604 F.Supp. 68, 71 (S.D. Ohio 1984).

      In this motion, all parties ask the Court to:  **(1)** preliminarily approve the class settlement on the terms set out in the Settlement Agreement; **(2)** approve the proposed form and method of notice to class members; **(3)** set an objection deadline; and **(4)** schedule a final "fairness" hearing.

**I.**     **THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE**

      **A.**    **The Legal Standards**

      District Court assessment of parties' settlement agreements must consider "the federal policy favoring settlement of class actions."  See, *e.g., UAW v. General Motors Corp.*, 497 F.3d

5

615, 632 (6th Cir. 2007); *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D.

Mich. 2003) (citations omitted) ("[T]here is a strong public interest in encouraging settlement of

complex litigation and class action suits because they are 'notoriously difficult and

unpredictable' and settlement conserves judicial resources.")  Fostering this policy, district court

review "must be limited to the extent necessary to reach a reasoned judgment that the agreement

is not the product of fraud or overreaching by, or collusion between, the negotiating parties and

that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Clark*

*Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878, 880, *reh. and reh. en banc denied*

(6th Cir. 1986) (*per curiam*), *cert. denied* 480 U.S. 934 (1987) (quoting *Officers for Justice v.*

*Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)).  See also *Priddy v. Edelman*, 883 F.2d 438,

447 (6th Cir. 1989).  "[A]bsent fraud or collusion and evidence that the settlement on a whole

was not fair, reasonable and adequate, [the] court does not second guess such a settlement."

*Clark Equip. Co.*, 803 F.2d at 880.

    In assessing fairness, adequacy, and reasonableness of class action settlements, district

courts consider various factors, including:

> (a) the likelihood of success on the merits weighed against the amount and form
> of the relief offered in the settlement; (b) the risks, expense, and delay of further
> litigation; (c) the judgment of experienced counsel who have competently
> evaluated the strength of their proofs; (d) the amount of discovery completed and
> the character of the evidence uncovered; (e) whether the settlement is fair to the
> unnamed class members; (f) objections raised by class members; (g) whether the
> settlement is the product of arm's length negotiations as opposed to collusive
> bargaining; and (h) whether the settlement is consistent with the public interest.

*Cardizem*, 218 F.R.D. at 522 (citations omitted); *IUE-CWA v. General Motors Corp.*, 238 F.R.D.

583, 594 (E.D. Mich. 2006) (quoting *UAW v. General Motors Corp.*, 2006 WL 891151 at *14

(E.D. Mich. Mar. 31, 2006) (Ex. C)); *UAW v. General Motors Corp.*, 497 F.3d at 631 (listing

similar factors).  Courts "may choose to consider only those factors that are relevant to the

settlement and may weigh particular factors according to the demands of the case." *IUE-CWA v. General Motors*, 238 F.R.D. at 594-595, quoting *UAW v. Ford Motor Co.*, 2006 WL 1984363 at *22 (E.D. Mich. July 13, 2006) (Ex. D).

"It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable." *Shy v. Navistar Intl. Corp.,* 1993 WL 1318607 at *2 (S.D. Ohio May 27, 1993) (Ex. E) (emphasis in original). When "a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. at 330, 350-351 (N.D. Ohio) (internal citations omitted).

District court preliminary assessment of a proposed settlement requires "no more than an informal presentation of the parties' proposals to the Court." *In re Inter-Op*, 204 F.R.D. at 337. Preliminary approval "is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 370 (S.D. Ohio 1990). Preliminary assessment may be based on information already known to the court, supplemented as necessary by briefs, motions or informal presentations by the parties. *Manual for Complex Litigation* §21.632 (4th ed. 2004).

"If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement."

*In re Telectronics Pacing Systems*, 137 F.Supp.2d 985, 1015-1016 (S.D. Ohio 2001) (quoting

*Manual for Complex Litigation* §30.44 (2d ed. 1985)); *In re Inter-Op Hip Prosthesis Liability*

*Litigation*, 204 F.R.D. 330, 350 (N.D. Ohio 2001).

### B.  The Legal Standards Applied

Here, the parties' Settlement Agreement is "the product of serious, informed, non-

collusive negotiations," "fair, reasonable, and adequate," and warrants preliminary approval

under the governing legal standards.

**First**, EaglePicher's appeal continued the substantial dispute between the parties.  In

support of their claims to vested lifetime retirement healthcare, plaintiffs invoke authorities

including *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), *cert. denied* 465 U.S. 1007

(1984)); *McCoy v. Meridian Automotive Systems*, 390 F.3d 417 (6th Cir. 2004); and *Golden v.*

*Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996), *cert. denied* 519 U.S. (1996).  In opposition,

EaglePicher asserts the right to make "reasonable" modifications, invoking authorities including

*Reese v. CNH America LLC*, 574 F.3d 315, *reh. denied* (6th Cir. 2009).  Recent Sixth Circuit

decisions illustrate the complexities of retirement healthcare litigation.  Compare *Reese v. CNH*

*America LLC*, 694 F.3d 681 (6th Cir. 2012) (allowing "reasonable" healthcare changes) with

*Moore v. Menasha Corp.*, 690 F.3d 444, 450 (6th Cir. 2012), *cert. denied* 133 S.Ct. 1643 (2013)

(citation omitted) (an "employer that contractually obligates itself to provide vested healthcare

benefits renders that promise 'forever unalterable'").  Here, the parties' settlement will end the

need to litigate their disputes, eliminate the expense and uncertainties of appeal, and avoid delay

occasioned by more prolonged litigation.

Indeed, the delay, and uncertainty, and complexity inherent in retiree health benefits class

actions make these cases "particularly" appropriate for settlement through "negotiation today"

rather than "litigation tomorrow" as the Sixth Circuit observed in *UAW v. General Motors*, 497 F.3d at 632:

> What makes these settlements particularly sensible, moreover, is that, even if this merits question favored one party over the other, the retirees still would have had ample reason to control the resolution of this dispute through negotiation today rather than litigation tomorrow. If we decided for the sake of argument that the retirees were likely to lose the *Yard-Man/Sprague* debate, little would stand in the way of the car companies' reducing or even eliminating the retirees' healthcare benefits in the future. If we decided for the sake of argument that the retirees were likely to win the debate, any such victory would run the risk of being a Pyrrhic one . . . [I]t is well to remember that the Federal Government's Pension Benefit Guaranty Corporation, which provides *pension* guarantees for the employees and retirees of financially distressed companies, has no sister agency that provides the same guarantees for retiree *healthcare* benefits.

See also *IUE-CWA*, 238 F.R.D. at 596 ("Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation.")

Here, settlement ensures that all class members will have retiree health coverage at the specified levels for their lifetimes.

**<u>Second</u>**, avoiding further delay is an objective particularly important to aging retirees, for whom a reasonable and certain resolution now is preferable to the *possibility* of a perfect resolution in the future, with expense, hardship, and uncertainty during the interim.  In *IUE-CWA*, Judge Hood cited examples of prolonged retiree health benefits lawsuits, including *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ("upholding, after 9 years of litigation, GM's right to modify salaried retiree benefits") and *Bittinger v. Tecumseh Products*, 201 F.3d 440 (6th Cir. 1999) ("affirming, after 8 years of litigation, employers right to modify benefits").  Judge Hood observed: "avoiding the delay necessary to litigate the dispute is in all parties' interest."  238 F.R.D. at 596-597.  Here, the Settlement Agreement provides all sides with beneficial certainty and prompt resolution.

**Third**, the Settlement Agreement provides an insurance and reimbursement program, which provides comprehensive healthcare, 100%-paid by Wolverine, which restores benefits to levels substantially the same as the levels that existed before the January 1, 2010 modifications. In addition, it provides a "make whole" remedy to reimburse class members for expense incurred as a consequence of the modifications.  Moreover, the Settlement Agreement makes two parties responsible for the class members' health benefits:  **(1)** Wolverine, by virtue of the Settlement Agreement and its contractual commitment to EaglePicher, and **(2)** EaglePicher, by virtue of the Court's judgment and orders, which remain enforceable if Wolverine does not perform under the Settlement Agreement.  This dual responsibility gives class members greater security.

**Fourth**, the settlement is even-handed.   All class members, including the class representatives, are treated the same; no class representative or class member receives preferential treatment.  The settlement is, under Rule 23(e), "fair."

**Fifth**, the settlement terms are the product of an informed and reasoned process in which both sides vigorously pressed their interests and, ultimately, developed a mutually-beneficial compromise.  The parties negotiated the Settlement Agreement at arm's-length, under the auspices of the Sixth Circuit mediation office, which itself is indicative of fairness, reasonableness, and the absence of collusion.  In addition, the parties reached agreement with the assistance of experienced counsel, also a factor demonstrating fairness, reasonableness, and adequacy.  See *IUE-CWA v. General Motors Corp.*, 238 F.R.D. at 597, 599 (negotiation "process was entirely at arm's length, with each party representing and pursuing its own interests, and exercising independent judgment"; the "judgment of the parties' counsel that the settlement is in

the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement'").[1]

**Sixth**, the parties extensively pressed the legal and factual merits of their positions throughout this litigation and, as well, addressed the mutual benefits of fair compromise. After the appeal was filed, the parties exchanged proposals and counterproposals, and eventually agreed on settlement terms that provide both sides with a favorable alternative to the expense and uncertainties of continued litigation. The parties and their legal counsel believe their efforts produced a Settlement Agreement that is "fair, reasonable, and adequate" and that this is manifest in the settlement terms. See *IUE-CWA v. General Motors Corp.*, 238 F.R.D. at 599 ("if the settlement agreement itself is fair, reasonable and adequate, then the court may assume that the negotiations were proper and free of collusion").

In these circumstances, the parties ask the Court to preliminarily approve their Settlement Agreement, set a reasonable deadline for any Rule 23(e)(5) objection, and set a Rule 23(e)(2) fairness hearing to consider settlement approval and final resolution of this lawsuit. See *In re Telectronics Pacing Systems*, 137 F.Supp.2d at 1015-1016 ("If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations...and falls with[in] the range of

---

[1] Class Counsel Stuart M. Israel was included by Judge Hood among those characterized as "reputable practitioners and trial counsel experienced in complex class action litigation" in *IUE-CWA v. General Motors Corp.*, in which Israel represented the IUE-CWA (238 F.R.D. at 597) and Israel has experience as class counsel in other LMRA/ERISA retirement healthcare litigation. See Docket 20, Ex. 7; Docket 34, ¶7; and Docket 39, Ex. 11. Defense counsel Howard E. Kochell, likewise, has extensive experience in litigating complex benefits and class action cases. See *Faulman v. Security Mutual Financial Co.*, 333 Fed.Appx. 699 (3rd Cir. 2009) (defense verdict in welfare benefit case affirmed); *Arena v. ABB Power T&D Co.*, Cause No. IP99-0391 C-M/S, U.S.D.C., S.D. Ind. (class action involving unpredictable contingent event pension benefits, and two subclasses with more than 3,000 class members approved); and *Moore v. ABB Power T&D Co.*, Cause No. IP00-0085-C-H/G, U.S.D.C., S.D. Ind. (retiree health benefits class settlement approved).

possible approval, then the Court should direct that notice be given to the class members" setting a fairness hearing).

## II.     THE PROPOSED RULE 23(e)(1) NOTICE TO CLASS MEMBERS

After preliminary determination that a proposed class action settlement is fair, reasonable, and adequate, a district court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1). District courts have "virtually complete discretion" in determining what constitutes reasonable notice. *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-1223 (6th Cir. 1981) (describing the district court's broad discretion as "well settled").

The content and method of notice "should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *UAW v. General Motors Corp.*, 497 F.3d at 629 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). What "the notice must do is 'fairly apprise the...class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *UAW v. General Motors Corp.*, 497 F.3d at 630 (citations omitted).

Here, the proposed notice (Ex. B) explains the litigation, explains (and will be accompanied by) the Settlement Agreement, details and charts the healthcare program required under the settlement terms, notifies class members of their right to object to the settlement and appear at the fairness hearing, and otherwise summarizes the Rule 23 process. With Court approval, Wolverine will mail the notice to all class members via first class mail to their last known addresses, compiled by Wolverine from its existing benefits and pension rolls.

The parties believe the proposed notice form, content, and distribution method comply with Rule 23.  *See UAW v. General Motors Corp.*, 2005 WL 5416766 (E.D. Mich. Dec. 22, 2005) (Ex. F) (approving notice by first class mail).  We ask the Court to approve the notice, with authority afforded to the parties to make necessary modifications to insert the objection deadline and the date and the time of the fairness hearing.

## III.    THE OBJECTION TIMETABLE

Rule 23(e)(5) specifies that any class member who would be bound by the settlement be given an opportunity to express any objection he or she may have to the settlement.  Here, the class consists of only 21 or so persons and it is not anticipated that there will or should be any objection to the settlement, as the settlement substantially restores the pre-2010 retirement healthcare levels and provides a "make whole" remedy.  To provide an opportunity for objection, however, the parties request that the court set an objection deadline measured at 14 days before the date set for the fairness hearing.

<strong>CONCLUSION</strong>

For the foregoing reasons, the parties ask the Court to grant their joint motion and **(1)** preliminarily approve the Settlement Agreement (Ex. A); **(2)** approve the proposed notice (Ex. B); **(3)** set an objection deadline measured at 14 days before the fairness hearing; and **(4)** set a date for a Rule 23(e)(2) "fairness hearing."

s/Stuart M. Israel

Stuart M. Israel (P15359)
Legghio & Israel, P.C.
306 South Washington, Suite 600
Royal Oak, MI 48067
248-398-5900
israel@legghioisrael.com


Class Counsel and Attorney for all Plaintiffs

Michael F. Saggau
Associate General Counsel
International Union, UAW
8000 E. Jefferson Avenue
Detroit, MI  48214
313-926-5216
msaggau@uaw.net

Attorney for UAW

May 9, 2013

s/Howard E. Kochell

Howard E. Kochell (5516-49)
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN  46204
317-236-1313
howard.kochell@btlaw.com

Jeffrey G. Muth (P65041)
Barnes & Thornburg LLP
171 Monroe Avenue NW, Ste 1000
Grand Rapids, Michigan 49503
(616) 742-3930
jmuth@btlaw.com

Attorneys for Defendant EaglePicher
   and Wolverine

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2013 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Howard E. Kochell
Barnes & Thornburg
11 South Meridian Street
Indianapolis, IN  46204
howard.kochell@btlaw.com

Jeffrey G. Muth (P65041)
Barnes & Thornburg LLP
171 Monroe Avenue NW, Ste 1000
Grand Rapids, Michigan 49503
(616) 742-3930
jmuth@btlaw.com

Parties may access this filing through the Court's system.

s/Stuart M. Israel
Stuart M. Israel