UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK HARGROVE, JR. and RICHARD WHITE,
for themselves and others similarly-situated, and
INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE,
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW),

                                               Case No. 2:10-cv-10946

        Plaintiffs,                       Class Action

v.                                        U.S. District Judge Arthur J. Tarnow

EAGLEPICHER CORPORATION also known as
EP MANAGEMENT CORPORATION and as
EAGLEPICHER MANAGEMENT COMPANY,

        Defendant.
_____/

## ORDER APPROVING SETTLEMENT

This matter was presented to the Court jointly by (**1**) plaintiffs Frank Hargrove Jr. and Richard White, for themselves and on behalf of the certified class; (**2**) plaintiff International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW); and (**3**) defendant EaglePicher Corporation, also known as EP Management Corporation and EaglePicher Management Company, pursuant to Fed.R.Civ.P. 23(e), for approval of the parties' Settlement Agreement to fully and finally resolve this class action.

The Court, having held a fairness hearing and considered the presentations and arguments of the parties, is satisfied that all the requirements of Rule 23(e) have been met and hereby APPROVES the class settlement.

The Court preliminarily approved the Settlement Agreement on June 28, 2013 and approved the notice to class members which described the settlement, set the objection deadline, and scheduled the fairness hearing.  (Docket 51).  The notice and settlement documents were mailed to class members.  The Court conducted the fairness hearing on September 5, 2013.  Based on the hearing and on the submissions to the Court, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

**The Parties and the Class.**

     **1.**     The individual plaintiffs and representatives of the certified class are retirees Frank Hargrove Jr. and Richard White.  The union plaintiff is the UAW.

     **2.**     The defendant is EaglePicher Corporation, also known as EP Management Corporation and EaglePicher Management Company ("EaglePicher").

     **3.**     The Court certified the class, approved the individual plaintiffs as class representatives, and approved class counsel on April 4, 2012.  (Docket 34).  The certified class consists of:

> All former EaglePicher Wolverine/Gasket employees who were members of the UAW-represented Collective Bargaining Unit at EaglePicher's now-closed Wolverine Gasket Plant in Inkster, Michigan who are eligible under collective bargaining agreements and welfare benefit plans for company-provided retirement healthcare, and all eligible surviving spouses and other eligible dependents of those retirees.

     **4.**     The retirees in the class worked in the UAW-represented collective bargaining unit at EaglePicher's Wolverine Gasket plant in Inkster, Michigan.  The class members retired under various collective bargaining agreements ("CBAs") governing the unit.  The retirees and other class members are participants and beneficiaries in ERISA-regulated welfare benefit plans

created, sponsored, and operated by EaglePicher to provide health benefits for the retirees and their eligible dependents and surviving spouses.

**The Claims and Defenses.**

     **5.**     The individual plaintiffs sued for themselves and the class under Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. §185, and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001 *et seq*.   UAW sued under LMRA Section 301. Plaintiffs claimed that defendant breached promises made in various CBAs to provide hourly retirees and their dependents and surviving spouses with lifetime health benefits.   Plaintiffs claimed that defendant broke those promises beginning in 2010 by modifying and reducing health benefits for class members unilaterally and without UAW written consent.   Plaintiffs asked the Court to direct defendants to reinstate the health benefits for class members at the levels that existed prior to January 1, 2010; to "make whole" class members for out-of-pocket healthcare expenses above what they would have paid if the benefits were not modified; and to otherwise meet contractual and legal obligations under the CBAs and ERISA.

     **6.**     EaglePicher responded that it did not promise lifetime health benefits in CBAs; that its obligations to provide retiree health benefits ended with the expiration of each CBA; that the Inkster plant was closed and sold and there are no current CBAs providing for continued retiree health benefits; that the class of retirees is no longer part of a bargaining unit represented by UAW, such that consent by the UAW could not be given to bind the class members; that EaglePicher had the legal right to reduce or make reasonable modifications to retiree health benefits and properly did so in 2010 and later, and has the right to do so into the future; and that EaglePicher had no obligation under any CBA or ERISA to restore or provide retiree health benefits at the levels that existed prior to January 1, 2010.   EaglePicher asked the Court to

determine that it did not breach any CBA or otherwise break any promises.  EaglePicher asked the Court to dismiss the lawsuit.

**The Litigation in the District Court.**

7.      This Court, on April 4, 2012, granted summary judgment in plaintiffs' favor and issued its permanent injunction.  The Court ordered:

> Defendant shall comply with its CBA obligations regarding retirement healthcare. Defendant shall promptly restore the status quo ante and provide class members with the healthcare benefits in force for the more than 20 years preceding January 1, 2010, and shall continue to provide these healthcare benefits, at no premium cost to class members, for the lifetime of each class member. Defendant shall promptly take such action as necessary to identify, and make whole class members for, the expenses incurred by class members due to the defendant's unilateral changes imposed on the class members during the period from January 1, 2010 until the date that the status quo ante is restored.
>
> A judgment and permanent injunction implementing this opinion shall issue. The Court shall administratively close this action, but shall retain jurisdiction over any post-judgment matters and issues of implementation and enforcement of this order, the judgment, and the permanent injunction.

Docket 35 at 10, reported as *Hargrove, et al. v. EaglePicher Corp.*, 852 F.Supp.2d 85 (E.D. Mich. 2012 (the "Injunction Order").   On April 4, 2012, this Court also entered its Final Judgment and Permanent Injunction (Docket 36, the "Final Judgment") in favor of the plaintiffs and against EaglePicher.   On May 10, 2012, this Court awarded attorney fees, costs, and expenses for class counsel, payable by EaglePicher, for the period November 14, 2009 through March 31, 2012.  (Docket 45).

**The Appeal, Mediation, and Settlement.**

8.      EaglePicher appealed to the United States Court of Appeals for the Sixth Circuit. In the course of the Sixth Circuit mediation process, the parties reached settlement resolving the appeal and intended to fully resolve this litigation.  The parties desire to avoid the additional

cost, time, effort, and uncertainties that would result from continued appeal regardless of the outcome, and desire to enter into the settlement reflected in their Settlement Agreement (Docket 49, Ex. A).  Because the stakes are high and the uncertainties substantial, the parties reached the mutually-acceptable compromise described in the Settlement Agreement.

9.      The Sixth Circuit remanded to this Court and the parties sought this Court's approval of the settlement and their Settlement Agreement through the procedures prescribed by Fed.R.Civ.P. 23.  As discussed ahead, the parties' settlement and their Settlement Agreement is approved.

**The Settlement Terms.**

10.      In an asset purchase agreement between EaglePicher and Wolverine Advanced Materials, LLC ("Wolverine"), Wolverine agreed by contract with EaglePicher to assume EaglePicher's responsibility for the retirement healthcare benefits addressed in this litigation. Under the Settlement Agreement, to which Wolverine is a party, Wolverine will undertake all the obligations imposed on EaglePicher by the Injunction Order and Final Judgment.  Under the Settlement Agreement, EaglePicher retains those responsibilities and obligations, but Wolverine will fully satisfy those responsibilities and obligations and in doing so will be deemed to satisfy EaglePicher's responsibilities and obligations under the Injunction Order and Final Judgment.

11.      The Settlement Agreement and its Exhibits (Docket 49, Ex. A), in general, require that Wolverine, through a Healthcare Program that includes a combination of insurance and reimbursement, will provide class members with 100%-Wolverine-paid lifetime retirement healthcare and prescription coverages.  The insurance and coverages provided by the Healthcare Program are described in the Settlement Agreement and its Exhibits.  In addition, the Settlement Agreement requires that Wolverine will provide "make whole" reimbursement to class members

for out-of-pocket expenses incurred by them during the period of, and as a result of, the reduced insurance and coverages.

12.     The Settlement Agreement also provides for reimbursement of later out-of-pocket expenses, so that the net effect of the Healthcare Program provided in the Settlement Agreement will be, combining insurance and the reimbursement, 100% Wolverine-paid healthcare for all class members.   The Settlement Agreement also provides for Wolverine payment of attorney fees, costs, and expenses and the costs and expenses of the Rule 23 approval process.

13.     The Settlement Agreement also preserves the enforceability against EaglePicher of the Court's Injunction Order and Final Judgment, except that the Agreement provides that Wolverine's full compliance with the terms of the Settlement Agreement, to the extent that those terms do not precisely restore the *status quo ante* as directed by the Court in Docket 35 and 36, shall be deemed to satisfy the obligations set out in Docket 35 and 36.   Again, the settlement terms are detailed in the Settlement Agreement and its Exhibits (Docket 49, Ex. A).

14.     The parties reached this settlement to avoid the expense, delay, and uncertainties of continuing the appeal and have advised the Court that they consider its terms to be a mutually-beneficial resolution of their dispute and an end to this litigation.

**Class Counsel's Assessment.**

15.     Class counsel and UAW counsel conclude that this settlement is in the best interests of the class and both concur that the settlement terms embodied in the Settlement Agreement are fair, reasonable, adequate, and beneficial to the Class.

16.     Class counsel identified a number of factors that led to his conclusion that the settlement is fair, reasonable, adequate, and beneficial to the Class.   Class counsel considered the uncertainties and delay involved in continued litigation of the pending appeal. He analyzed the governing law, the CBAs, and other pertinent documents and evidence.   While class counsel

concluded that plaintiffs have a substantial case on appeal, he also recognized that continued litigation would be vigorously contested by EaglePicher, that the final outcome of any appeal is uncertain, and that whatever the outcome, continued litigation would entail additional delay in the final resolution of the parties' dispute.  He recognized, too, that settlement would provide prompt and certain and substantial and positive relief for the class members.

17.    In addition, class counsel considered that the Settlement Agreement terms, through the Healthcare Program's combination of Wolverine-paid insurance and reimbursement, would have the net effect of providing class members with lifetime, fully-paid retirement healthcare, the core objective sought in the litigation.  In addition, he considered that the Settlement Agreement provides appropriate "make whole" relief and for Wolverine payment of attorney fees, costs, and expenses of litigation and the expenses of the Rule 23 approval process. He considered, too, that the settlement terms obligate Wolverine's compliance without diminishing EaglePicher's continued responsibilities and obligations under this Court's Injunction Order and Final Judgment, providing retirees with additional security.

18.    Based on these factors, class counsel, in consultation with the class representatives and the UAW, UAW legal counsel, and various class members, concluded that the terms of the Settlement Agreement are fair, reasonable, and beneficial to the class.

**Defense Counsel's Assessment.**

19.    Defense counsel concurs that the settlement is fair, reasonable, and adequate and is a mutually-beneficial and positive resolution of the parties' dispute, bringing certainty, avoiding more delay, and providing salutary and valuable benefits to retirees and the retirees' eligible dependents and surviving spouses.

**Notice to the Class.**

      **20.**    The class notice—titled "Important Notice About Health Benefits For EaglePicher/Wolverine Gasket Retirees And Their Families" (Docket 49, Ex. A-2)—was approved by the Court on June 28, 2013 (Docket 51).  Wolverine sent the notice by first class mail to all class members at their last known addresses.

      **21.**    The class notice summarized the litigation, the settlement, and the approval process.  Wolverine mailed the notice to class members, with each notice accompanied by a complete copy of the Settlement Agreement and its Exhibits (Docket 49, Ex. A).

      **22.**    The class notice outlined its purpose and summarized the lawsuit, identified the parties and the lawyers, defined the certified class, outlined the parties' claims and defenses, and summarized the litigation history. The notice described the mediated negotiations and summarized the settlement terms.  The class notice outlined the parties' reasons for settlement, specified that the settlement entails compromise, and described the procedure for objecting to the settlement.  The class notice advised class members that access to all court filings is available at the courthouse and through PACER and invited class members to request additional information about the litigation, the settlement, or the procedure from class counsel by mail or telephone. (Docket 49, Ex. A-2).

**The Approval Process.**

      **23.**    Pursuant to the Court's Preliminary Order approving the settlement, (Docket 51), the Court held a fairness hearing on September 5, 2013.  No class member made a written objection to the settlement and no class member appeared at the hearing to present an objection.

      **24.**    As discussed next in more detail, the Court concludes that the parties' settlement, concurred in by all parties and their counsel, and reached under the auspices of the Sixth Circuit mediation process, is the product of reasoned and informed "arm's length" negotiations which

produced a mutually-beneficial settlement that eliminates uncertainty, avoids further delay, and is consistent with the public interest, and, that in these circumstances, is fair, reasonable, and adequate under Rule 23(e)(2).

## CONCLUSIONS OF LAW

1.     This Court has jurisdiction under LMRA Section 301, 29 U.S.C. §185, and ERISA Sections 502(3)(1) and (f), 29 U.S.C. §§1132(e)(1) and (f).

2.     This is a certified class action under Fed.R.Civ.P. 23(a) and (b)(1) and (2) and (g) as decided by the Court on April 4, 2010 in the order certifying this class action and approving class representatives Frank Hargrove Jr. and Richard White and class counsel Stuart M. Israel. (Docket 34).

**The Legal Standards.**

3.     The law favors the settlement of class action litigation.  See *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions"); and *Steiner v. Fruehauf corp.*, 121 F.R.D. 304, 305 (E.D. Mich. 1988), *aff'd sub nom Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("case law favors the voluntary settlement of class actions").

4.     "The claims, issues, or defenses of a certified class may be settled...only with the court's approval." Fed. R. Civ. P. 23(e).

5.     To warrant district court approval, a class action settlement must be "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  See *UAW v. General Motors*, 497 F.3d at 631 ("Before approving a settlement, the district court must conclude that it is 'fair, reasonable, and adequate.'"); *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citations omitted), *appeal dismissed* 391 F.3d 812 (6th Cir. 2004), *cert. denied* 544 U.S.

9

1049, 125 S.Ct. 2297, 161 L. Ed. 2d 1089 (2005) ("In deciding whether to grant final approval of the Proposed Settlement, this Court must determine, after holding a fairness hearing, whether the settlement is 'fair, adequate and reasonable'").

6.      "The evaluation and approval of a class settlement is committed to the sound discretion of the district court." *IUE-CWA*, 238 F.R.D. at 594, citing, *inter alia*, *Clark Equip. Co. v. Allied Industrial Workers*, 803 F.2d 878, 880 (6th Cir. 1986), *cert. denied* 480 U.S. 934, 107 S.Ct. 1574, 94 L. Ed. 2d 765 (1987).  The district court "should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'" *IUE-CWA*, 238 F.R.D. at 593.

7.      The district court's "role in passing upon the propriety of a class action settlement is limited to a determination of whether the terms proposed are fair and reasonable to those affected." *Steiner*, 121 F.R.D. at 305, citing, *inter alia, Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).  The district court's evaluation of a class action settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co.*, 803 F.2d at 880 (citation omitted).  Accord: *IUE-CWA*, 238 F.R.D. at 594.

8.      The district court is to assess a proposed settlement based on a "range of reasonableness" which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *IUE-CWA*, 238 F.R.D. at 594 (citations omitted).  See also *Cardizem*, 218 F.R.D. at 523 (applying a "range of reasonableness" measure).  The district court is to consider "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement

rather than pursued." *Cardizem*, 218 F.R.D. at 522 (citation omitted).  In assessing a proposed settlement, the district court "should not substitute its judgment for that of the parties." *Steiner*, 121 F.R.D. at 306.  See also *IUE-CWA*, 238 F.R.D. at 594 (citations and quotations marks omitted) (the court "must respect the parties' compromise" and "may not substitute his or her judgment for that of the litigants and their counsel").

9.       Before conducting a fairness hearing, a district court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement.  Fed.R.Civ.P. 23(e)(1).  The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *UAW v. General Motors*, 497 F.3d at 629, citing, *inter alia*, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L. Ed. 865 (1950).

10.      The Court finds that the class notice and related documents approved by the Court and sent to all class members satisfied Rule 23(e)(1) notice requirements.  In particular, the notice set out the litigation history, explained the settlement, set out the objection procedure and deadline, provided a mechanism for class members to seek further information, and was accompanied by the salient documents—the Settlement Agreement and its Exhibits.  See *UAW v. General Motors*, 497 F.3d at 630 (upholding notice which "clearly explained its purpose, discussed the nature of the pending suit and proposed class and accurately summarized the 76-page settlement agreement and incorporated exhibits" and which also enclosed a "copy of the settlement agreement, ensuring that retirees would have full access to the very document the district court would examine at the fairness hearing").

11.      The purpose of the fairness hearing is to provide "procedural safeguards" giving class members the opportunity to present objections on the record and giving the parties the

opportunity to present "sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." *UAW v. General Motors*, 497 F.3d at 635. "In satisfying these requirements, a district court has wide latitude." *Id*. The district court may "limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Id*. (citations omitted). The fairness hearing need not "entail the entire panoply of protections afforded by a full-blown trial on the merits." Rather, the district court has "the discretion to limit the fairness hearing" to whatever is "consistent with the ultimate goal of determining whether the proposed settlement is fair, adequate and reasonable." *Tennessee Ass'n of HMOs, Inc. v. Grier*, 262 F.3d 559, 567, *reh. en banc denied* (6th Cir. 2001).

12. The Sixth Circuit identified seven "factors" that "guide the inquiry" undertaken by the district court: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW v. General Motors*, 497 F.3d at 631, citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983). See also *IUE-CWA*, 238 F.R.D. at 594; *Cardizem*, 218 F.R.D. at 522; and *Steiner*, 121 F.R.D. at 305-306. In considering the seven factors, the district court may choose to "consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA*, 238 F.R.D. at 594-595, citing, *inter alia*, *Granada*, 962 F.2d at 1205-1206. Here, as detailed ahead, considering the pertinent factors, the Court concludes settlement is fair, reasonable, and adequate under Rule 23(e)(2).

**Assessing the Dispute and Weighing Continued Litigation Against Settlement.**

    **13.**    The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW v. General Motors*, 497 F.3d at 631.  In assessing the parties' legal dispute, the district court's task "is not to decide whether one side is right or even whether one side has the better of these arguments....The question rather is whether the parties are using settlement to resolve a legitimate legal and factual legal disagreement." *Id.* at 632.  *UAW v. General Motors* found a legitimate dispute over whether "collective bargaining agreements vest former union workers with their healthcare benefits upon retirement."  At 631.

    **14.**    Here, consideration of this factor leads to the conclusion that there is indeed a legitimate dispute and that resolution of this lawsuit by the settlement better serves the class than continued litigation.

    **15.**    The core of the parties' dispute is whether the retiree health benefits at issue are, under the series of governing CBAs, vested, unalterable, lifetime benefits, or whether they are not, and, if they are, whether they may be modified unilaterally at defendant's discretion.  The parties' views on this question are diametrically opposed.  Resolution of this core question would involve adjudication of sharply-contested disagreements on appeal.  Here, the Court finds that the parties' dispute on appeal was genuine, that continued litigation would carry substantial expense, that the outcome is uncertain for all sides, and that, in particular, class members would bear the risk that continued litigation would leave them with future uncertainty and lesser benefits than those offered by the settlement.  These circumstances, the Court finds, favor the settlement that ends uncertainty, avoids further delay, promptly ameliorates hardship, and is beneficial to each side and to the class as a whole.

    **16.**    In short, the settlement—reached in the Sixth Circuit mediation process—resolves uncertain and protracted litigation in which the legal merits are the subject of a good faith dispute

and benefits class members.  Accordingly, the Court concludes that the settlement is informed, prudent, and rational, within an appropriate "range of reasonableness," beneficial, and fair, reasonable, and adequate under Rule 23(e)(2).

**The Risk/Delay/Expense Factor.**

17.     Whatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation.  *IUE-CWA*, 238 F.R.D. at 596.  In *IUE-CWA*, Judge Hood noted the protracted litigation in two retiree health benefits cases finally decided by the Sixth Circuit: *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), which after nine years of litigation upheld the employer's right to modify salaried retirees' benefits, and *Bittinger v. Tecumseh Products*, 201 F.3d 440 (6th Cir. 1999), which after eight years of litigation affirmed the employer's right to modify retiree health benefits.  See also *UAW v. General Motors*, 2006 U.S. Dist. LEXIS 14890, 2006 WL 891151 at *17 (E.D. Mich.) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement"), *consol. and aff'd. UAW v. General Motors*, 497 F.3d 615 (6th Cir. 2007), and *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002) (internal quotation marks and citations omitted) ("the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court....The prospect of such a massive undertaking clearly counsels in favor of settlement.").

In addition, in retiree benefits litigation, delay at the least diminishes the value of possible victory at some distant point in the future.  Here, there is an aged group of class members, some who might not benefit at all from a victory that comes only after more years of litigation.  And, again, absent settlement, all class members would be subject to the uncertainty, hardship, and delay attendant to continued litigation on appeal or otherwise.  The "risk/delay/expense" factor,

too, warrants approval of the settlement, which promptly will provide comprehensive health benefits for all class members.

**The Judgment Of Legal Counsel.**

18.     The judgment of the parties' legal counsel that the settlement is in the best interest of the settling parties "is entitled to significant weight, and supports the fairness of the class settlement." *IUE-CWA*, 238 F.R.D. at 597 (citations omitted). See also *Cardizem*, 218 F.R.D. at 525 ("In approving a proposed settlement, the Court also considers the opinion of experienced counsel as to the merits of the settlement"). Here, as discussed, all parties' legal counsel, the UAW, and the class representatives share the view that the settlement is fair, reasonable, and adequate, and beneficial to class members.

19.     The Court is familiar with legal counsel for both sides from their efforts in the course of this litigation. The Court recognizes their experience and diligence and concludes that their endorsement of the settlement "is entitled to significant weight." *IUE-CWA*, 238 F.R.D. at 597. Their efforts and analysis, already summarized, displayed an informed, reasoned, practical, and productive approach. Their universal assessment that the settlement is in the interest of all parties and is fair, reasonable, and adequate is well-supported and is consistent with the Court's views. See. *IUE-CWA*, 238 F.R.D. at 597 (citations omitted): "the Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" This factor, too, supports approval of the Settlement Agreement.

**The Discovery/Evidence Factor.**

20.     The parties exchanged documents and information and collected the governing CBAs and other documents and evidence relevant to their dispute. In addition, EaglePicher provided information about the history and status of the health benefits, including the names and locations of retirees, eligible dependents, and surviving spouses, benefits data, and other

information pertinent to both the litigation and the mediated settlement discussions.  Also, in addition to their own internal investigation and information gathering, the parties during the mediation process were aided by Justin Goodwin, EaglePicher's health benefits consultant.  The Court finds that through discovery and cooperative information exchange the parties developed and considered a body of information sufficient to permit their informed assessment of the litigation and the settlement.  The Court finds that the parties and the Court have sufficient information to conclude that the settlement is a fair, reasonable, and adequate resolution of the parties' dispute. The discovery/evidence factor, too, warrants approval of the settlement under Rule 23(e)(2).

**The Fairness Factor.**

21.     District courts scrutinize settlements to ensure that absent class members have not "lost out in favor of attorneys and named class members."  *IUE-CWA*, 238 F.R.D. at 598 (citations omitted).  There is nothing in the parties' Settlement Agreement that improperly benefits attorneys or that favors the class representatives.  To the contrary, the Court finds that the Settlement Agreement is even-handed in its treatment of class members, that it does not favor the class representatives, and that it reasonably provides for Wolverine payment of class counsel fees, costs, and expenses without diminishing the value of the settlement to the class members.

22.     The named class representatives are given no special consideration or advantage under the Settlement Agreement.  Rather, they are treated the same as all other class members. In addition, the Settlement Agreement provides for class counsel fees to be paid by Wolverine, not out of any settlement fund for the class, and the fees are based on hours worked at reasonable hourly rates, some already approved by the Court in Docket 45, and the rest subject to Court approval.  Again, the treatment of the class members and the class representatives and class

counsel under the Settlement Agreement is fair, reasonable, and adequate. This factor, too, favors settlement.

**The "Arm's Length" Factor.**

23.    "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *IUE-CWA*, 238 F.R.D. at 598 (citations omitted). Here, there is no suggestion of fraud or collusion. Indeed, since this litigation began in 2010, the parties and their counsel have displayed civil but pronounced and vigorous disagreement over core questions as well as over other issues in dispute in the litigation and in the settlement discussions. The Sixth Circuit mediator oversaw and participated in the settlement discussions. Counsel for the parties regularly reported to the Sixth Circuit mediator on their struggles over the substance of the settlement and, until the end, on their struggles over the details of the Settlement Agreement and other documents relating to the settlement. As in *IUE-CWA*, the Court concludes that the "process was entirely at arm's length, with each party representing and pursuing its own interests, and exercising independent judgment." 238 F.R.D. at 599. The arm's length factor also supports approval of the settlement.

**The Public Interest Factor.**

24.    The Court finds the settlement is in the public interest. The settlement benefits the parties and simultaneously serves the public interest in the availability of healthcare and in achieving certainty for retirees and for productive businesses that provide employment in this area and elsewhere. It also serves the public interest in resolving disputes in federal courts with the maximum possible expediency and efficiency. See *Cardizem*, 218 F.R.D. at 530 (citations omitted) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources"). The public interest factor, too, favors approval of the settlement.

## CONCLUSION

**25.**     The Court finds that the Settlement Agreement resolves a genuine legal dispute between the UAW and retirees on one hand, and EaglePicher on the other; it is the product of informed "arm's length" negotiations; it achieves a mutually-beneficial settlement in the absence of fraud and collusion; it binds Wolverine as well as EaglePicher, adding to the retirees' security; it eliminates risk and uncertainty for all sides; it avoids further delay and promptly eliminates hardship; it serves the interests of the class as a whole, presents a better option than continued litigation, and therefore is in compliance with the requirements of Section 302(c)(2) of the Labor-Management Relations Act, 29 U.S.C. §186(c)(2).  See *U.S. v. Mabry*, 518 F.3d 442, 447 (6th Cir. 2008).  In addition, the Court finds that the Settlement Agreement conserves judicial resources, is consistent with the public interest, has the parties' and counsel endorsements, is within an acceptable "range of reasonableness" and, considering all the circumstances, is fair, reasonable, and adequate under Rule 23(e)(2).

For the foregoing reasons, the Court approves the parties' settlement and the Settlement Agreement in all respects and as to all parties.  The Court will issue a judgment accordingly.


                                        s/Arthur J. Tarnow
Dated: September 5, 2013                 Judge, United States District Court
                                        Eastern District of Michigan

Distribution:

Stuart M. Israel
Legghio & Israel, P.C.
306 South Washington, Suite 600
Royal Oak, Michigan 48067
248-398-5900
israel@legghioisrael.com


Class Counsel and Attorney for all Plaintiffs

Michael F. Saggau
Associate General Counsel
International Union, UAW
8000 E. Jefferson Avenue
Detroit, MI  48214
313-926-5216
msaggau@uaw.net


Attorney for UAW

Howard E. Kochell
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, Indiana 46204
317-236-1313
howard.kochell@btlaw.com

Jeffrey G. Muth
Barnes & Thornburg LLP
171 Monroe Avenue NW, Ste 1000
Grand Rapids, Michigan 49503
616-742-3930
jmuth@btlaw.com

Attorneys for Defendant EaglePicher and
    Wolverine